**Gary B. FILLER and Lawrence Perlman, Trustees of the TRA Rights Trust Plaintiffs,**

v.

**HANVIT BANK, Shinhan Bank, and Chohung Bank Defendants.**

**No. 01 Civ. 9510(MGC).**

United States District Court, S.D. New York.

Feb. 26, 2003.

Gregory P. Joseph Law Offices LLC, New York, NY, By: Gregory P. Joseph, Pamela Jarvis, Honey L. Kober, Sandra M. Lipsman, Susan M. Davies, Douglas J. Pepe, for Plaintiffs.

Squire, Sanders & Dempsey LLP, New York, NY, By: Daniel L. Brockett, Mark C. Dosker, for Defendant Chohung Bank.

Sidley, Austin, Brown & Wood LLP, New York, NY, By: Steven M. Bierman, Alan M. Unger, Elizabeth Storch, Allen C. Kim, for Defendant Hanvit Bank, (of counsel).

Kelley Drye & Warren LLP, New York, NY, By: Thomas B. Kinzler, William A. Escobar, for Defendant Shinhan Bank.

## OPINION

CEDARBAUM, District Judge.

Plaintiffs Filler and Perlman are trustees of the TRA Trust, the sole successor in interest to Seagate Technology, Inc. ("Seagate"). This action arises out of the transfer by Seagate of its shares in Dragon Systems, Inc. to Lernout & Hauspie Speech Products NV ("L & H Belgium"), in exchange for shares in L & H Belgium. That transaction took place on June 7, 2000. Defendants are three Korean banks which plaintiffs allege engaged in a scheme to defraud investors in the shares of L & H Belgium by entering into sham agreements with L & H Belgium's Korean subsidiary, Lernout & Hauspie Korea ("L & H Korea"), which enabled L & H Belgium to inflate its revenues and assets. Plaintiffs assert six claims: (1) securities fraud in violation of Section 10(b) of the Securities Exchange Act and SEC Rule 10b–5; (2) racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (3) conspiracy to engage in racketeering in violation of RICO, 18 U.S.C. § 1962(d); (4) common law fraud; (5) aiding and abetting common law fraud; and (6) conspiracy to defraud. All three defendants move to dismiss the claims against them under Fed.R.Civ.P. 12(b)(6) for failure to state a claim and Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity. Additionally, defendants Hanvit Bank ("Hanvit") and Chohung Bank ("Chohung") move to dismiss for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1601, *et seq.*

For the reasons that follow, defendants' motions to dismiss under Rule 9(b) are granted, with leave to plaintiffs to amend the complaint with respect to Shinhan Bank ("Shinhan") by March 31, 2003. The claims against Hanvit and Chohung are dismissed under the Foreign Sovereign Immunities Act.

## Lack of Jurisdiction Under the FSIA

■ As an initial matter, defendants Hanvit and Chohung argue that the court lacks jurisdiction over them because they are foreign states within the meaning of the FSIA. 28 U.S.C. § 1604 provides immunity to "foreign state[s]" subject to certain exceptions set forth in sections 1605 through 1607. Section 1603(a) provides, in relevant part, that "[a] 'foreign state' . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." Subsection (b) states:

> An 'agency or instrumentality of a foreign state' means any entity-
>
> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States ... nor created under the laws of any third country. 28 U.S.C. § 1603(b).

A defendant need make only a prima facie showing that it is a foreign state. Once a defendant makes such a showing, it is presumptively immune and the burden shifts to the plaintiff to show that a statutory exception to immunity applies. *See Cargill Int'l SA v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993).

Chohung and Hanvit are corporations organized under the laws of the Republic of Korea, as required by the first and third prongs of the definition of a foreign state. The main dispute between the parties with respect to immunity is whether Chohung and Hanvit meet the second prong of the definition because they are owned by the Korean government through the Korean Deposit Insurance Corporation ("KDIC").[1] The judges of this court are split on whether such "tiering" of entities is allowed under the FSIA. *Compare Musopole v. South African Airways*, 172 F.Supp.2d 443, 445–47 (S.D.N.Y.2001) (holding tiering permissible); *Lehman Bros. Commercial Corp. v. Minmetals Int'l, Non–Ferrous Metals Trading Co.*, 169 F.Supp.2d 186, 190–91 (S.D.N.Y.2001) (same); *Parex Bank v. Russian Savings Bank*, 81 F.Supp.2d 506, 507 (S.D.N.Y.2000) (same); *with Bank of China v. NBM*, 2002 WL 1072235 (S.D.N.Y.2002) (holding tiering impermissible); *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 198 F.Supp.2d 420 (S.D.N.Y.2002) (same). Determination of this issue turns on whether the term "foreign state" under Section 1603(b)(2) includes "agencies or instrumentalities of a foreign state" or is limited to foreign nations themselves. The Second Circuit has not yet ruled on this question.

Those judges allowing tiering base this conclusion on an analysis of the legislative history and purpose of the FSIA. Judges holding tiering impermissible have attempted to read the ambiguity out of the words of Section 1603, and are also concerned that a foreign government's interest in a defendant might become very remote if tiering is taken to its furthest extremes. It is important to note that in this case, the Korean government owns a large majority of the shares of Chohung and Hanvit. While this ownership is through an intermediate entity, the KDIC, the government's ownership interest in the banks is not diluted. The KDIC was established by a Korean statute—the Depositors Protection Act. It performs a function traditionally performed by governments: "to contribute to protecting depositors and maintaining the stability of the financial system by efficiently operating a deposit insurance system in order to cope with a situation in which a financial institution is unable to pay its depositors due to its bankruptcy." Depositors Protection Act, Article 1 (translated). Directors of the KDIC are appointed by the Korean Ministry of Finance and Economy and the president of the KDIC is appointed by the President of the Republic of Korea. The Ministry of Finance and Economy oversees many of the KDIC's operations. Thus, the KDIC is an "organ" of the Korean government within the meaning of Section 1603(b)(2) and it would appear that the treasury of the Republic of Korea would be affected by a judgment against banks owned by the KDIC.

---

1. The KDIC owned more than 70% of the stock of each bank at the time of the allegedly fraudulent conduct of these banks, as well as at the time this action was commenced.

Moreover, the KDIC continues to own the same stock interest in both Chohung and Hanvit.

This is not the hypothetical case in which a foreign government owns only 51% of the intermediate entity and the intermediate entity, in turn, owns 51% of the defendant. In this case, an organ of the Korean government owns more than 70% of Chohung and Hanvit. I adopt the reasoning of my colleagues who permit tiering. Because the statutory language is ambiguous, I do not subscribe to efforts to treat the words as if they were crystals. Defendants have therefore satisfied their burden of making a prima facie showing that they are foreign states within the meaning of Section 1603.

**Exception to Immunity**

■ Plaintiffs seek to overcome the prima facie showing made by Chohung and Hanvit. They argue that these banks lose their immunity under the "commercial activity" exception of 28 U.S.C. § 1605(a)(2). That section provides:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case-

. . .

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

It is not disputed that the acts of Chohung and Hanvit complained of constitute a "commercial activity." However, it is also undisputed that the commercial activity took place solely in Korea. Therefore, this action would not fall under the commercial activity exception unless the acts complained of caused a "direct effect" in

the United States. "[A]n effect is direct if it follows as the immediate consequence of the defendant's activity." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992) (internal quotations omitted). In this case, the claims against Chohung and Hanvit as primary wrongdoers arise out of allegedly false statements made by the banks to L & H Belgium's auditors in Korea. These statements are alleged to have been incorporated into audit reports and transmitted by the auditors to L & H Belgium and later to the plaintiffs in the form of financial statements provided by L & H Belgium to Seagate in connection with Seagate's acquisition of securities in the Belgian company. These statements did not have a direct effect in the United States where Seagate received the stock of L & H Belgium. Plaintiffs' financial loss is too remote from the acts of the Korean banks' in Korea to be considered the "immediate consequence" of such acts. The claims against Chohung and Hanvit of aiding and abetting and conspiracy arise out of allegedly fraudulent banking agreements entered into in Korea between the banks and L & H Korea. These agreements are even more remote from the acquisition by Seagate of the stock of L & H Belgium, and cannot be said to have had an immediate consequence in the United States.

Because plaintiffs have not shown that the commercial activities of Chohung and Hanvit in Korea had a direct effect in the United States, the claims arising out of those activities do not fall within the commercial activity exception to immunity. Therefore, the claims against Chohung and Hanvit are dismissed for lack of subject matter jurisdiction under the FSIA.

**Failure to Plead Fraud with Particularity**

■ Although the claims against Chohung and Hanvit are dismissed for lack of

subject matter jurisdiction, the following analysis of the plaintiffs' claims applies to the claims made against all three defendants. Plaintiffs concede that it is appropriate to apply the law of New York to defendants' motions to dismiss. Therefore, I analyze plaintiffs' common law claims under New York law.

## Federal Securities Fraud and Common Law Fraud Claims

To state a claim under Section 10(b) or Rule 10b–5, "plaintiffs must prove that [defendants] (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *In re Int'l Bus. Machs. Corporate Sec. Litig.*, 163 F.3d 102, 106 (2d Cir.1998). In order to state a common law fraud claim under New York law, a plaintiff must allege: "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." *Boule v. Hutton*, 138 F.Supp.2d 491 (S.D.N.Y.2001).

Rule 9(b) requires a party averring fraud or mistake to state with particularity "the circumstances constituting [the] fraud or mistake." Fed.R.Civ.P. 9(b). The "particularity requirement" contained in Rule 9(b) is substantial. *Rich v. Maidstone Financial, Inc.*, 2002 WL 31867724, (S.D.N.Y.2002). "[A] complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886

F.2d 8, 11 (2d Cir.1989)); see also *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987) Additionally, when fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of as to each defendant. *Rich*, 2002 WL 31867724 at *10 (internal quotations omitted). To meet the pleading requirements of Rule 9(b), a complaint may not simply "clump[ ] defendants together in vague allegations." *Id.* (quoting *In re Blech Securities Litigation*, 928 F.Supp. 1279, 1294 (S.D.N.Y. 1996). Rule 9(b) also requires a plaintiff to adequately allege that the defendant's statements were the proximate cause of the plaintiff's injuries. *Spencer Trask Software and Information Services LLC v. RPost Intern. Ltd.*, 2003 WL 169801, *21 (S.D.N.Y.2003).

In this case, from the allegations of the complaint, it is impossible to tell whether any of the bank transactions vaguely described constitute fraud, and if so, who was the object of the fraud. The acquisition of securities at issue took place on June 7, 2000. For the plaintiffs to allege reliance, as required for actionable fraud under both federal and common law, plaintiffs must allege with particularity that defendants made false statements *prior to* that date. Here, plaintiffs allege that defendants made "false confirmations" in Korea to L & H Belgium's auditors that loans to L & H Korea were without recourse, when in fact they were with recourse. But plaintiffs have not specified a confirmation by any defendant that was made *prior to* the acquisition complained of or shown to Seagate before its acceptance of stock of L & H Belgium.

For the same reasons, the amended complaint does not allege with particularity that defendants made any statements that proximately caused plaintiffs' injuries or made "in connection with" the June 7,

2000 transaction as required by Section 10(b) of the Exchange Act.

## Common Law Aiding and Abetting and Conspiracy Claims

 Plaintiffs' claims of aiding and abetting common law fraud and conspiracy to defraud are subject to the same pleading requirements under Rule 9(b) as their claims of common law fraud. *See Spira v. Curtin,* 2001 WL 611386, *4 (S.D.N.Y. 2001); *Renner v. Chase Manhattan Bank,* 2000 WL 781081, *5 (S.D.N.Y.2000). In order to plead the elements of aiding and abetting fraud under New York law, plaintiffs must allege with particularity facts showing (1) the existence of a fraud; (2) defendants' knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission. *Wight v. Bankamerica Corp.,* 219 F.3d 79, 91 (2d Cir.2000). "In alleging the requisite 'substantial assistance' by the aider and abettor, the complaint must allege that the acts of the aider and abettor proximately caused the harm to the [plaintiff] on which the primary liability is predicated." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 62 (2d Cir.1985). "Allegations of a 'but for' causal relationship are insufficient." *Id.* at 63. Aider and abettor liability will not attach where the injury was not a direct or reasonably foreseeable result of the defendant's conduct. *Id.* Under New York law, an allegation of conspiracy to defraud does not excuse a plaintiff from pleading with particularity facts showing an underlying fraud claim. Additionally, conspiracy to defraud requires: "(1) an agreement among two or more parties, (2) a common objective, (3) acts in furtherance of the objective and (4) knowledge." *Diamond State Ins. Co. v. Worldwide Weather Trading LLC,* 2002 WL 31819217 (S.D.N.Y. 2002).

 Plaintiffs allege that the primary fraud that defendants aided and abetted and/or conspired to commit was the issuance of false financial statements by L & H Belgium. From the allegations of the complaint, it is impossible to decipher the connection between defendants' agreements with L & H Korea, and the issuance of false financial statements by L & H Belgium. Therefore, with respect to plaintiffs' aiding and abetting claims, plaintiffs have failed to plead with particularity how defendants provided substantial assistance to L & H Belgium in connection with L & H Belgium's issuance of the false financial statements and how that conduct proximately caused plaintiffs' injury. With respect to the conspiracy claims, plaintiffs have failed to allege with particularity any agreement between any of the defendants and L & H Belgium, and have not specified any acts of the defendants that were in furtherance of the objectives of that agreement. Nor does the amended complaint elucidate how that conduct proximately or reasonably foreseeably caused injury to plaintiffs.

## RICO Claims

 The requirements of Rule 9(b) also apply to plaintiffs' RICO claims with predicate acts of mail fraud, wire fraud and aiding and abetting securities fraud. *See Moore v. PaineWebber, Inc.,* 189 F.3d 165, 172 (2d Cir.1999). Apart from other problems pointed to by defendants, plaintiffs' RICO claims are deficient in particularity. Plaintiffs allege that each defendant knew and intended that false confirmations given to L & H Belgium's auditors and agreements defendants entered into with L & H Korea would cause L & H Belgium to misrepresent its financial condition to investors in the United States. Plaintiffs further allege that each defendant knew and intended that L & H Belgium would communicate these misrepresentations by

means of mail and wire. However, all of these allegations are made on information and belief, and plaintiffs do not specify with particularity the basis of their belief for any of these allegations. As discussed above, it is impossible to understand from the vague allegations of this complaint how the alleged false confirmations could serve as the predicate acts, since plaintiffs do not allege with particularity that these confirmations were issued prior to the acquisition of L & H Belgium stock by Seagate. Furthermore, it is difficult to see how any of the defendants intended that L & H Belgium take *any* action, since the relationship between the defendant Korean Banks and L & H Belgium has not been explained with any particularity. Finally, as discussed above, plaintiffs have failed to plead with particularity the elements of aiding and abetting securities fraud. Even if aiding and abetting securities fraud were a predicate act under RICO, plaintiffs' failure to plead its elements with the requisite particularity renders it an insufficient predicate act.

## Conclusion

Plaintiffs have already been given leave to file an amended complaint. The amended complaint is deficient in particularity and is therefore dismissed under Rule 9(b). A second amended complaint may be filed by March 31, 2003 setting out with the required particularity plaintiffs' claims against Shinhan. As discussed above, the claims against Chohung and Hanvit are dismissed.

SO ORDERED.