**Gary B. FILLER, trustee of the TRA Rights Trust and Lawrence Perlman, Trustee of the TRA Rights Trust, Plaintiffs-Appellees,**

v.

**HANVITT BANK and Chohung Bank, Defendants-Appellants,**

**Shinhan Bank, Defendant.**

**Janet Baker, James Baker, JKBaker, LLC, and JMBaker, LLC, Plaintiffs–Appellees,**

v.

**Hanvit Bank and Chohung Bank, Defendants–Appellants,**

**Shinhan Bank, Defendant.**

**Docket Nos. 03–7861(L), 03–7871(CON), 03–7863(L), 03–7893(CON).**

United States Court of Appeals, Second Circuit.

Argued: April 2, 2004.

Decided: Aug. 6, 2004.

Gregory P. Joseph, Gregory P. Joseph Law Offices, LLC, New York, NY, for

Plaintiffs–Appellees Gary B. Filler and Lawrence Perlman.

Karen C. Dyer, Boies Schiller & Flexner, LLP, Orlando, FL, for Plaintiffs–Appellees Janet Baker, James Baker, JKBaker LLC, and JMBaker LLC.

Daniel L. Brockett, (Mark C. Dosker, Rebecca W. Haverstick, on the brief), Squire, Sanders & Dempsey, LLP, New York, NY, for Defendant–Appellant Chohung Bank.

Steven M. Bierman, (Alan M. Unger, Daniel A. McLaughlin, Mark E. Walli, Catherine B. Winter, Allen C. Kim, on the brief), Sidley Austin Brown & Wood, LLP, New York, NY, for Defendant–Appellant Hanvit Bank.

Before: JACOBS, STRAUB, B.D. PARKER, Circuit Judges.

B.D. PARKER, JR., Circuit Judge:

Defendants-appellants Hanvit Bank and Chohung Bank (the "Banks") appeal from interlocutory orders of the United States District Court for the Southern District of New York (Cedarbaum, *J.*) concluding that the Banks were not "foreign states" entitled to immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.* The orders vacated previous ones granting immunity under the FSIA with respect to claims brought against them by Gary Filler and Lawrence Perlman (the "Filler plaintiffs") and Janet and James Baker (the "Baker plaintiffs"). The vacatur occurred as a consequence of an intervening Supreme Court decision, *Dole Food Co. v. Patrickson,* 538 U.S. 468, 477, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003), which held that a foreign state must itself own a majority of a corporation's shares if the corporation is to be deemed an instrumentality of the state under the FSIA.[1] We affirm.

## I. BACKGROUND

The Filler plaintiffs are trustees of the TRA Rights Trust, which is the successor-in-interest of Seagate Technology, Inc. ("Seagate") and holds all claims arising out of Seagate's · acquisition in June 2000 of $170 million in stock of Lernhout & Hauspie Speech Products, N.V. ("L & H"), a Belgian software company. The Baker plaintiffs owned more than $300 million of L & H stock, which they obtained in June 2000 in a stock swap for their principal interest in Dragon Systems, Inc. A few months later, L & H was implicated in a multibillion dollar fraud permeating their worldwide operations. The fraud, which was perpetrated by senior management of L & H along with outside auditors and others in the United States and Korea, involved reporting hundreds of millions of dollars of nonexistent revenue from contracts with related parties or fictitious customers. After the fraud was exposed, more than one-third of the revenue reported by L & H for the 1998–2000 period was reversed, including the entirety of the $160 million of revenue reported by the firm's Korean operations in 1999 and 2000. This fraud has been the subject of an SEC as well as a criminal investigation and multiple arrests by Belgian authorities. Public exposure of the fraud caused a loss of 95% of L & H's market capitalization—about $9 billion—including the value of the stock held by the appellees.

Chohung Bank and Hanvit Bank are both commercial banks organized under the laws of Korea with headquarters in Seoul. Both banks were private entities

---

1. There are two cases on appeal: *Baker v. Hanvit Bank,* No. 03–7863(L), and *Filler v. Hanvit Bank,* No. 03–7861(L). Because they present the same legal issue, we resolve them together in this opinion.

prior to January 1999 when, because of severe financial problems, they received substantial capital infusions from the Korean Deposit Insurance Corporation (KDIC). The KDIC is a Korean governmental institution created by the Korea's Depositor Protection Act and a presidential decree. Under its enabling statute, the KDIC exists as a "special legal entity" for the purpose of operating a deposit insurance system. The KDIC is run by the Korean Ministry of Finance and the Economy of the Republic of Korea. At the time of the filing of these actions the KDIC directly owned 80% of the shares of Chohung Bank[2] and 100% of the shares of Woori Finance Holdings Co., Ltd., which in turn owned 100% of the shares of Hanvit Bank. Since the filing of the actions, the KDIC has sold Chohung Bank to a private entity, and Hanvit Bank is expected to emerge as a private entity in the near future. In their complaints, the Baker and Filler plaintiffs allege that Chohung and Hanvit (along with Shinhan Bank, a party not appealing here) were involved in the fraud perpetrated by L & H, and that the two banks actively made material misrepresentations to their independent auditors about the source and amounts of L & H's revenue.

The Filler plaintiffs' action was filed against Chohung and Hanvit in October 2001 while the Baker plaintiffs' complaint was filed against the two banks a year later. In February 2003, the District Court dismissed the Filler plaintiffs' claims against Chohung and Hanvit on the grounds that the Banks enjoyed sovereign immunity under the FSIA, and in March dismissed the Baker plaintiffs' claims against the Banks on the same ground. Following the Supreme Court's decision in

*Dole Food* in April 2003, the plaintiffs in both cases successfully moved for reconsideration. The District Court vacated its previous orders dismissing the claims against Hanvit and Chohung, finding that *Dole Food* precluded sovereign immunity where, as here, government ownership of the defendant corporations is indirect. The Banks appeal, and we affirm.

## II. DISCUSSION

### A. Standard of Review

■ We have appellate jurisdiction under the collateral order doctrine, which allows an immediate appeal from an order denying immunity under the FSIA. *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 387 (2d Cir.2000); *Drexel Burnham Lambert Group Inc. v. Comm. of Receivers for Galadari*, 12 F.3d 317, 324 (2d Cir.1993). We review a district court's legal determinations regarding its subject matter jurisdiction, such as whether sovereign immunity exists, *de novo* while reviewing its factual findings for clear error. *Abrams v. Société Nationale des Chemins de Fer Francais*, 332 F.3d 173, 176 (2d Cir.2003).

### B. Sovereign Immunity

■ The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993) (quotation marks and citation omitted); *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 138–39 (2d Cir.2001). The FSIA provides that: "[s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the

2. The remaining 20% was owned by financial institutions, securities firms, private corpora- tions, and individual shareholders.

jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." [3] 28 U.S.C. § 1604. The Act further provides:

> For purposes of this chapter -
>
> (a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
>
> (b) An "agency or instrumentality of a foreign state" means any entity—
>
> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title nor created under the laws of any third country.

28 U.S.C. § 1603. There is no dispute that both Chohung and Hanvit satisfy the first and third criteria of § 1603(b)'s test for "agency or instrumentality" status—they are both separate legal entities and are neither citizens of a state of the United States nor created under the laws of a third country.

▮ Further, there is no dispute that the KDIC is an organ of a foreign state— South Korea—under § 1603(b)(2). *Filler v. Hanvit Bank*, 247 F.Supp.2d 425, 428 (S.D.N.Y.2003) (*Filler I*). Although there is no specific test for "organ" status under the FSIA, various factors are relevant:

> (1) whether the foreign state created the entity for a national purpose;
>
> (2) whether the foreign state actively supervises the entity;
>
> (3) whether the foreign state requires the hiring of public employees and pays their salaries;
>
> (4) whether the entity holds exclusive rights to some right in the [foreign] country; and
>
> (5) how the entity is treated under foreign state law.

*Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 846–47 (5th Cir.2000) (quotation marks and citation omitted) (alteration in original); *see Corporacion Mexicana de Servicios Maritimos, S.A.*, 89 F.3d 650, 655 (9th Cir.1996). The District Court correctly concluded that the KDIC is an organ of a foreign state because the KDIC was formed by statute (the Korea Depositors Protection Act) and presidential decree, it performs functions traditionally performed by the government (protecting depositors and promoting financial stability), has its directors are appointed by the Ministry of Finance and Economy; its president appointed by the President of the Republic of Korea; and many of its operations overseen by the Ministry of Finance and Economy. *Filler I*, 247 F.Supp.2d at 428.

▮ The only question is whether the Banks satisfy the second criteria for agency or instrumentality status—namely,

---

**3.** Sections 1605 and 1607 of Title 28 provide some exceptions to the general rule of sovereign immunity—for example, when the foreign state waives immunity, when the suit arises out of commercial activity carried out in the United States or commercial activity causing a direct effect in the United states, when the suit addresses a violation of proper-

ty rights in contravention of international law, and when the suit consists of counterclaims made against a foreign state that initiates litigation. 28 U.S.C. §§ 1605, 1607. While the plaintiffs-appellees did raise the commercial activity exception below, that argument is not implicated on appeal.

whether they are "organ[s] of a foreign state" *or* have a majority of their shares owned by "a foreign state or political subdivision thereof." 28 U.S.C. § 1603(b). The Banks contend that they do, arguing that once we determine that the KDIC is an organ of the government of South Korea, they automatically become agencies or instrumentalities of the state because the majority of their stock is owned by the KDIC. *See In re Air Crash Disaster Near Roselawn*, 96 F.3d 932, 939–41 (7th Cir. 1996) (accepting this tiering theory of sovereign immunity). *But see Gates v. Victor Fine Foods*, 54 F.3d 1457, 1461–63 (9th Cir.1995) (rejecting the same). In other words, the Banks argue that since the KDIC is an organ and therefore an agency or instrumentality of a foreign state, it is also a "foreign state" by virtue of § 1603(a)'s definition of a foreign state as "includ[ing]" its agencies or instrumentalities. And because the KDIC owns the majority of their shares, the two Banks contend that they are agencies or instrumentalities of a foreign state by virtue of § 1603(b)'s ownership prong. Put another way, the Banks argue the transitive: (1) foreign state means agency or instrumentality; (2) agency or instrumentality means organ or majority-owned corporation; (3) therefore foreign state means organ or majority-owned corporation; and (4) therefore, majority-owned corporations of an organ are majority-owned corporations of a foreign state.

We note that Chohung and Hanvit claim to be majority-owned corporations of a foreign state for purposes of FSIA analysis even though Chohung is a second-tier subsidiary and Hanvit is a third-tier subsidiary. Accepting their analysis would permit an *infinite* number of subsidiaries to enjoy sovereign immunity. Each subsidiary becomes an agency or instrumentality, and therefore the "foreign state," for purposes of assessing its majority ownership of the next subsidiary in line.

The District Court initially accepted the Banks' argument, holding that such tiering was allowed and that Chohung and Hanvit were entitled to foreign sovereign immunity by virtue of KDIC's ownership interest in them. *Filler I*, 247 F.Supp.2d at 429.[4] The Supreme Court then addressed tiering under the FSIA in *Dole Food*, affirming the Ninth Circuit and noting that "[t]he Court of Appeals resolved the question of the FSIA's applicability by holding that a subsidiary of an instrumentality is not itself entitled to instrumentality status. Its holding was correct." 538 U.S. at 473, 123 S.Ct. 1655. Because the companies claiming immunity were "separated from the [foreign state] by one or more intermediate tiers," the Court found that these companies "were not instrumentalities of [the foreign state] under the FSIA at any time." *Id.* at 473–74, 123 S.Ct. 1655. The Court relied on the elementary principle of corporate law that corporations are distinct from their shareholders to conclude that "only direct ownership of a majority of shares by the foreign state satisfied the statutory requirement" of majority owner-

---

4. While our Circuit has never ruled on the question, *Filler*, 247 F.Supp.2d at 428, the Ninth and Seventh Circuit have come to starkly different conclusions on the application of tiering to sovereign immunity analysis. In *Gates*, 54 F.3d 1457, the court held that although one defendant was an "organ" (and thus an agency or instrumentality) of Canada, the organ's majority ownership of a subsidiary did not similarly make that subsidiary an

instrumentality. *Id.* at 1462–63. In contrast stood the Seventh Circuit, which in *Roselawn*, 96 F.3d 932, held that "tiering" was allowed for FSIA purposes, rejecting the Ninth Circuit's reasoning in favor of a broad interpretation of foreign state, and ruling that an instrumentality *was*, by definition, a foreign state, thus turning its subsidiaries—all tiers of them—into instrumentalities subject to the protection of the FSIA. *Id.* at 940–41.

ship. *Id.* at 474, 123 S.Ct. 1655. In light of this ruling, the District Judge, acting on a motion for reconsideration under Fed. R.Civ.P. 54(b), revised and vacated the earlier dismissal of plaintiffs' claims, holding that the Banks were not entitled to sovereign immunity. *Filler v. Hanvit Bank,* No. 01 Civ. 9510, 2003 WL 21729978, 2003 U.S. Dist. LEXIS 12836 (S.D.N.Y. July 25, 2003); *Baker v. Hanvit Bank,* No. 02 Civ. 8251, 2003 WL 21729962, 2003 U.S. Dist. LEXIS 12837 (S.D.N.Y. July 24, 2003).

While *Dole Food* rejected the contention that § 1603(b)(2)'s "majority ownership" clause allowed for the tiering of corporate subsidiaries, such that each could avail itself of sovereign immunity under the FSIA, 538 U.S. at 473, 123 S.Ct. 1655, the Banks advance a somewhat different argument in this case—namely, that an "organ" under the first half of § 1603(b)(2) that is an "agency or instrumentality" is also, by definition, a "foreign state" under § 1603(a), and that its subsidiary is therefore *directly* owned by a foreign state and entitled to sovereign immunity. Accepting the Banks' proposed distinction would, however, eviscerate *Dole Food.* Rather than claiming a subsidiary is entitled to immunity because of successive majority ownership up the chain of control, defendants would simply claim that at each level, majority ownership grants agency or instrumentality status, designation as a foreign state, and, therefore, sovereign immunity. Such a result would be incompatible with the purpose of the FSIA, which is to grant governmental, not private corporate immunity, and, in any event, would reflect infidelity to the Supreme Court's reasoning in *Dole Food.* The fact that Chohung is a second-tier subsidiary while Hanvit is a third-tier subsidiary only makes the problem more apparent because it requires an additional finding that Woori is an agency or instrumentality and there-

fore a foreign state, thus conferring immunity on Hanvit. Such a result is incompatible with *Dole Food.* The Supreme Court made it unmistakably clear that "a subsidiary of an instrumentality is not itself entitled to instrumentality status," 538 U.S. at 473, 123 S.Ct. 1655, and that "only *direct* ownership of a majority of shares by the foreign state satisfies the statutory requirement." *Id.* at 474, 123 S.Ct. 1655 (emphasis added).

The Banks' argument fails for a number of other reasons as well. First, the statutory language of § 1603(a) makes clear that a "foreign state ... *includes* a political subdivision of a foreign state or an agency or instrumentality of a foreign state ...." 28 U.S.C. § 1603(a) (emphasis added). This statement is not equivalent to saying that a foreign state *is* or *is defined as* an agency or instrumentality. *Gates,* 54 F.3d at 1462. While these latter terms would suggest equivalency between the foreign state and the agencies and instumentalities, the use of the term "includes" implies that agencies and instrumentalities, as well as political subdivisions, are subsumed within the "foreign state." Thus, a proper understanding of the term "includes" does not support the notion of recursive tiering. Once an entity is determined to be an agency or instrumentality, it is deemed *part of* the foreign state but it does not *become* the foreign state and, therefore, cannot confer agency or instrumentality status on corporate entities further down the chain of ownership.

Further, as the Ninth Circuit recognized, if Congress intended "foreign state" to mean "agency or instrumentality" as appellants urge, it must also have meant for "foreign state" to mean "political subdivision" by the terms of § 1603(a). *Id.* However, this latter proposition clearly cannot be the case as the rest of the statute repeatedly distinguishes between

foreign states and political subdivisions. For example, § 1603(b)(2) states that an entity must be "an organ of a foreign state or political subdivision thereof," in order to be accorded instrumentality status. *Id.* (noting this contradiction in more detail). If we were to accept the Banks' argument, we would render the reference to political subdivisions in these provisions redundant, a result that is to be avoided in statutory construction. *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.,* 515 U.S. 687, 698, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995) (applying cannon of interpretation disfavoring readings of statutes that render statutory language surplusage).

■ Additionally, our interpretation is consistent with the restrictive theory of sovereign immunity codified in the FSIA. *Republic of Austria v. Altmann,* —— U.S. ——, ——, 124 S.Ct. 2240, 2249, 159 L.Ed.2d 1 (2004); *Verlinden B.V. v. Cent. Bank of Nig.,* 461 U.S. 480, 486–89, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). The restrictive theory provides that "a state is immune from the jurisdiction of foreign courts as to its sovereign or public acts (*jure imperii*), but not as to those that are private or commercial in character (*jure gestionis*)." *Nelson,* 507 U.S. at 359–60, 113 S.Ct. 1471. Finally, we note that while the KDIC serves a public function in ensuring the stability of the South Korean banking system, the same cannot be said of the defendant Banks, which have conceded that they have reverted or are in the process of reverting back to private ownership. Thus, denial of sovereign immunity to Chohung and Hanvit would not undermine a public function of the government of Korea and basically impacts the private commercial interests of the Banks.

## III. CONCLUSION

For these reasons, we affirm the District Court's denial of defendant-appellants' motions to dismiss on the ground of sovereign immunity.