336 F.Supp.2d 310 (2004)
In re WORLDCOM, INC. SECURITIES LITIGATION
Grace Weinstein and Sylvia Carraway, individually and on behalf of all others similarly situated, Plaintiffs,
v.
Bernard J. Ebbers, et al., Defendants.
No. 02 Civ.3288 DLC, No. 03 Civ.2841.
United States District Court, S.D. New York.
September 17, 2004.
Brian Murray, Eric Belfi, Murray, Frank & Sailer LLP, New York, NY, David Pastor, Gilman and Pastor LLP, Stonehill Corporate Center, Saugus, MA, Robert C. Schubert, Willem Jonckheer, Schubert & Reed LLP, Two Embarcadero Center, San Francisco, CA, Donald Enright, Finkelstein Thompson & Loughran, Duvall Foundry, Washington, D.C., Craig G. Harley, Chitwood & Harley, Atlanta, GA, George W. Healy, IV, George W. Healy, IV & Associates, Gulfport, MS, for Plaintiffs.
Pamela Rogers Chepiga, Andrew Rhys Davies, Nathan Reilly, Allen & Overy LLP, New York, NY, for Defendants Carl J. Aycock & John Porter.
Thomas J. Kavaler, David G. Januszewski, Cahill Gordon & Reindel LLP, New York, NY, for Defendants Gordon S. Macklin & Lawrence C. Tucker.
*311 George E. Ridge, William G. Cooper, Cooper, Ridge & Latinberg, P.A., Jacksonville, FL, for Defendant Bert C. Roberts, Jr.
Alan R. Friedman, Marjorie E. Sheldon, Kramer Levin Naftalis & Franklen LLP, New York, NY, for Defendant Estate of John Sidgmore.
Autumn J.S. Hwang, Geoffrey S. Harper, Beth G. Jaynes, Kelly R. Vickers, Fish & Richardson P.C., New York, NY, for Defendant Francesco Galesi.
Stuart F. Pierson, Troutman Sanders LLP, Washington, D.C., for Defendant Stile A. Kellett, Jr.
Brendan V. Sullivan, Jr., Michael S. Sundermeyer, Christopher N. Manning, Karyn A. Temple, Williams & Connolly LLP, Washington, D.C., for Defendant Judith Areen.
Sofia Giatrakos, Paul, Hastings, Janofsky & Walker LLP, New York, NY, for Defendant James C. Allen.
Lawrence Levinson, Piper Rudnick, LLP, Washington, D.C., for Defendant Clifford L. Alexander, Jr.
William Boyer, Sharp & Associates, Washington, D.C., for Defendant Max E. Bobbit.
Martin London, Richard A. Rosen, Brad S. Karp, Eric S. Goldstein, Joyce S. Huang, Paul Weiss Rifkind Wharton & Garrison LLP, New York, NY, Robert McCaw, Peter K. Vigeland, Wilmer Cutler & Pickering, New York, NY, for Defendants Citigroup Global Markets Inc. (f/k/a Salomon Smith Barney Inc.) and Jack Grubman.
Eliot Lauer, Michael Moscato, Daniel R. Marcus, Curtis, Mallet-Prevost, Colt & Mosle LLP, New York, NY, for Defendant Arthur Andersen LLP.

OPINION & ORDER
COTE, District Judge.
This Document Relates to:
The Director Defendants,[1] the SSB Defendants,[2] and Arthur Andersen, LLP ("Andersen") have each moved to dismiss Weinstein v. Ebbers, No. 03 Civ. 2841 (the "Weinstein Action"), a putative nationwide class action brought on behalf of "holders" of WorldCom, Inc. ("WorldCom") securities and claiming violations of Georgia state law. Because there is no cause of action for aiding and abetting a breach of fiduciary duty under Georgia law, the Weinstein Action's sole claim against the SSB Defendants and Andersen must be dismissed. In addition, because Georgia law does not support a "holder" claim, the Director Defendants' motion to dismiss all claims against them is granted.
Background
The Weinstein Action is but one of many lawsuits arising from the collapse of WorldCom. The issues in and the history of WorldCom civil litigation have been described in many previous Opinions.[3] An *312 outline of the history relevant to the Weinstein Action is presented here.
On June 25, 2002, WorldCom declared that it would undertake a massive restatement of its financial statements. Shortly thereafter, it filed the largest bankruptcy in United States history. Even before WorldCom's June 25 announcement, the first class action alleging WorldCom claims was filed in the Southern District of New York and assigned to this Court. That action pleaded violations of federal securities law, and with few exceptions, the lawsuits that followed did so as well. Those actions filed in state court were removed as "related to" WorldCom's bankruptcy. Actions alleging either class or individual claims ("Individual Actions") and filed outside this district were transferred to this Court by the Judicial Panel on Multi-District Litigation ("MDL Panel"). The class actions were consolidated for pretrial purposes by Order dated August 15, 2002 ("Class Action").
By Order dated December 23, 2003, the Court found that the Individual Actions and the Class Action involve common questions of law and fact, and that consolidation of these actions for pretrial purposes was necessary. See In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288(DLC), 2002 WL 31867720, at *1 (S.D.N.Y. Dec.23, 2002). The consolidated WorldCom securities litigation is referred to as the Securities Litigation.[4] Pursuant to a May 28, 2003 Order ("May 28 Order"), actions transferred to this Court are automatically consolidated with the Securities Litigation unless plaintiffs object to consolidation within ten days after service on their counsel of the May 28 Order. See In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288(DLC), 2003 WL 21242882 (S.D.N.Y. May 28, 2003). The May 28 Order set a schedule for the amendment of pleadings. For those actions that had not already arrived on this Court's docket, the amended pleadings had to be filed by the later of July 11 or twenty-one days of arrival on the Court's docket. The requirement of defendants to answer the complaints was stayed.
Meanwhile, the motions to dismiss the Class Action complaint ("Class Complaint") were largely denied,[5] and fact discovery in the Securities Litigation began in May 2003. See In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288(DLC), 2003 WL 22953645, at *1-2 (S.D.N.Y. Dec.16, 2003). A class was certified on October 24, 2003. See In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267.
Fact discovery of all defendants in the Securities Litigation ended on July 9, 2004. With limited exceptions, summary judgment motions in the Class Action are to be fully submitted October 1. The trial in the Class Action is set to begin on January 10, 2005.
The Weinstein Action
The Weinstein Action was filed on July 19, 2002, as a class action in Georgia State *313 Court, Gwinnet County. A first amended class action complaint was filed on August 22, 2002. On or about October 18, 2002, the Weinstein Action was removed to the United States District Court for the Northern District of Georgia. On April 16, 2003, the action was transferred to this Court by the MDL Panel. An Order of July 23, 2003 stated that the Weinstein Action was governed by the Securities Litigation consolidation orders, including the May 28 Order. In an October 28 letter, two of the law firms bringing the Weinstein Action, Gilman and Pastor and Schubert & Reed ("Weinstein Counsel") requested that they be appointed lead counsel for the purported "holder" class. At a conference on October 30, Weinstein Counsel were asked to indicate, among other things, under which jurisdiction's laws they sought to bring their claims, the legal authority for asserting a nationwide class action based on state law claims, the legal support for claims on behalf of "holders," as well as an analysis of the impact of the Securities Litigation Uniform Standards Act ("SLUSA") on their clients' claims. The Weinstein Plaintiffs' counsel requested an opportunity to make a further submission to respond to these questions and in support of their application. On November 7, Weinstein Counsel filed a formal motion to appoint lead counsel for the "holder" class. The motion did not adequately address the issues raised at the October 30 conference. At a conference on November 13, Weinstein Counsel asserted that Georgia law should govern the Weinstein Action.
On December 30, 2003, the Weinstein Action plaintiffs ("Weinstein Plaintiffs") moved for leave to serve and file a second amended complaint. Over the objections of the defendants, a March 10, 2004 Order granted this untimely motion,[6] but ordered that no further amendment of the Weinstein Action would be permitted without a showing of diligence and good cause. In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288(DLC), 2004 WL 435089 (S.D.N.Y. Mar.10, 2004) ("March 10 Order"). On March 17, 2004, the Weinstein Plaintiffs filed a second amended class action complaint. At a pretrial conference on April 16, defendants indicated their intent to move to dismiss the Weinstein Action and a briefing schedule was established. The motions to dismiss were served on June 18, 2004. On April 20, without leave or consent and in violation of the March 10 Order, the Weinstein Plaintiffs served, but did not file, a corrected second amended class action complaint. On May 5, again without leave or consent and in further violation of the March 10 Order, the Weinstein Plaintiffs filed and served their second corrected amended class action complaint ("Amended Complaint"), which is the subject of the instant motions. The motions to dismiss the Amended Complaint were fully submitted on August 11.
The Amended Complaint
The Amended Complaint purports to assert four Georgia common law claims on behalf of a putative nationwide class of persons who purchased WorldCom securities prior to April 29, 1999 and held that stock "through and including June 25, 2002" because misrepresentations made to them during that period convinced these investors that WorldCom stock was a sound investment.[7] The Weinstein Plaintiffs assert common law fraud, negligent misrepresentation, and breach of fiduciary duty claims against the Director Defendants, and an aiding and abetting breach of fiduciary duty claim against all the defendants. *314 Principally on the basis that WorldCom is incorporated in Georgia, the Weinstein Plaintiffs assert that their claims are governed by Georgia law.[8]
The Director Defendants
Almost all of the allegations in the Amended Complaint are drawn from the Class Complaint. One hundred and thirty-three of the 199 paragraphs in the "Substantive Allegations" section of the Amended Complaint are copied verbatim from the Class Complaint.[9] The Amended Complaint alleges that WorldCom engaged in two principal forms of improper accounting: reduction of "line costs"[10] and exaggeration of revenues. The Amended Complaint does not contend that the Director Defendants were involved in, or aware of, accounting irregularities. The Amended Complaint outlines many misrepresentations allegedly made to the Weinstein Plaintiffs via press releases, public comments, and Securities and Exchange Commission ("SEC") 10-Q filings, but identifies only defendants Ebbers and Scott Sullivan ("Sullivan") as the directly responsible parties.[11] The Amended Complaint does not allege that the Director Defendants had any knowledge of the alleged falsity the press releases, Ebbers' public comments, or the SEC 10-Q filings which were signed by Sullivan.
The central allegations of the Amended Complaint against the Director Defendants are that they breached their fiduciary duty of care because they were recklessly ignorant of WorldCom's financial condition and improper public disclosure of that condition. The Amended Complaint contends that the Director Defendants signed some or all[12] of WorldCom's SEC 10-K filings,[13] and were ultimately responsible for the accuracy of shareholder reports and shareholder communications, and other information related to WorldCom that was disseminated to the Weinstein Plaintiffs.
*315 It alleges that the WorldCom directors were "disengaged from the Company, passive, deferential to Ebbers, and failed to institute or enforce proper corporate governance procedures, in violation of their fiduciary duties." More specifically, the Amended Complaint alleges that the Audit Committee of WorldCom's Board of Directors, of which several Director Defendants were members, "failed to become sufficiently familiar and involved with the Company's internal financial working," and failed in many respects with regard to both the internal audit department and WorldCom's outside auditor, Andersen.[14]
The SSB Defendants
The Weinstein Plaintiffs allege that the SSB Defendants "had knowledge of, and provided substantial assistance to, the [Director] Defendants' breaches" of their fiduciary duties to WorldCom. In particular, the Amended Complaint alleges that an illicit and concealed quid pro quo arrangement existed between the SSB Defendants and WorldCom pursuant to which, to obtain enormous banking fees, the SSB Defendants provided certain of the Director Defendants with exclusive access to shares of initial public offerings being underwritten by the SSB Defendants, issued highly positive analyst reports regarding WorldCom to support its stock price, and through a subsidiary, loaned Ebbers millions of dollars to support his personal business interests.
Andersen
The Amended Complaint alleges that Andersen: (a) knew or was reckless in failing to know that WorldCom's financial statements, which included Andersen's unqualified opinions, were materially false and misleading; or (b) knew or recklessly disregarded that such documents would be issued or disseminated to the investing public, including holders of WorldCom securities; and (c) knowingly and substantially participated or acquiesced in the issuance and/or dissemination of such documents. The Amended Complaint lists various ways in which Andersen allegedly violated Generally Accepted Auditing Standards (GAAS) in performing its audits of WorldCom, and also alleges that Andersen could have or should have performed various tests or procedures in auditing the company that would have led to the discovery of the Director Defendants' alleged fiduciary breaches.
Reliance
The Amended Complaint alleges that the two named Weinstein Plaintiffs, and other similarly situated class members reasonably and justifiably "received and relied upon" (1) the truthfulness and accuracy of WorldCom's annual and quarterly reports to shareholders, SEC filings, and related press releases, (2) the 1999, 2000, and 2001 audits by Andersen, and (3) the purported independence of the SSB Defendants' analyst reports and related public statements, in deciding to continue to hold their WorldCom securities. More specifically, the Amended Complaint states that the "net effect" of defendants' alleged misrepresentations and omissions "was that they harmed plaintiffs and the Holder *316 Class by inducing them to hold their WorldCom securities." The Amended Complaint contains no more detailed allegations of reliance. The Amended Complaint does not state that any false statement in particular was a substantial factor in a decision to hold stock nor are there allegations about when and how many shares they would have sold if the Weinstein Plaintiffs had an accurate picture of WorldCom's financial situation. The Amended Complaint does not contain any allegations that the Weinstein Plaintiffs received any of the allegedly material false information in a more direct fashion than any other WorldCom investor.
Motions to Dismiss
Andersen and the SSB Defendants argue that the sole Georgia common law claim against them, aiding and abetting a breach of fiduciary duty, must be dismissed on five grounds: (1) Georgia law does not recognize a cause of action for aiding and abetting a breach of fiduciary duty; (2) even if such a claim were available under Georgia law, the Amended Complaint fails to state such a claim; (3) Georgia law does not support a cause of action brought on behalf of "holders"; (4) even if "holder" claims were cognizable, the Amended Complaint fails to state a "holder" claim; and (5) SLUSA preempts the Weinstein Plaintiffs' claims.[15] For their part, in addition to these five arguments, the Director Defendants assert that the four Georgia common law claims asserted against them  common law fraud, negligent misrepresentation, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty  must be dismissed because (1) the Weinstein Plaintiffs lack standing to bring what the Director Defendants characterize as derivative claims, and as such, the claims are property of the reorganized debtor;[16] (2) it is inappropriate to apply Georgia law to all the claims in this action; and (3) the Amended Complaint fails to plead all the claims with necessary particularity. Moreover, the Director Defendants contend that the fraud count must be dismissed for failure to plead scienter, and the negligent misrepresentation count must be dismissed because there can be no duty of care to an indeterminate class.
The Weinstein Action must be dismissed. Because it is clear that there is no common law cause of action under Georgia law for aiding and abetting a breach of fiduciary duty and there is no reason to believe that Georgia law would recognize the Weinstein Plaintiffs'"holder" claims, there is no need to examine the defendants' many alternative grounds for dismissing the Weinstein Action.
Discussion
These motions to dismiss require a determination of whether Georgia recognizes a cause of action for aiding and abetting a breach of fiduciary duty, or any cause of action brought by a class of those who held securities based on generalized allegations of reliance on public statements.[17] If the law of Georgia "is uncertain *317 or ambiguous, the job of the federal courts is carefully to predict how the highest court of [Georgia] would resolve the uncertainty or ambiguity." Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 199 (2d Cir.2003). In doing so, federal courts must give "fullest weight to the decisions of a state's highest court," and "proper regard to the decisions of a state's lower courts." Id. (citation omitted). Federal courts should also consider the decisions of federal courts construing state law, in particular the circuit court within whose jurisdiction the state at issue is located. Id.; Booking v. Gen'l Star Mgmt. Co., 254 F.3d 414, 421 (2d Cir.2001). Unless another court of appeals has ignored "clear signals emanating from the state's highest court pointing to a different rule," Factors Etc., Inc. v. Pro Arts, Inc., 652 F.2d 278, 283 (2d Cir.1981), a federal court is "bound" by another court of appeals' interpretations, while sitting in diversity, of the law of a state within its bounds. Booking, 254 F.3d at 421. Georgia is within the jurisdiction of the Eleventh Circuit Court of Appeals.
Aiding and Abetting a Breach of Fiduciary Duty
The only courts that have addressed whether there is a cause of action for aiding and abetting a breach of fiduciary duty under Georgia law have held that no such claim exists. In Munford v. Valuation Research Corp., 98 F.3d 604 (11th Cir.1996), the Eleventh Circuit ruled that Georgia law does not recognize the tort of aiding and abetting a breach of fiduciary duty. Id. at 613. The claim in Munford had been filed by a debtor corporation in bankruptcy against an investment bank for aiding and abetting corporate officers and directors in the breach of their fiduciary duties. Id. at 608. The investment bank had given the corporation advice about its options in selling itself, including the fiscal soundness of the company that acquired the corporation. Id. at 606-607. Both the bankruptcy court and district court had ruled that the claim failed as a matter of law. Id. at 608. "Resolv[ing] the issue of law as the Georgia state court would," Munford declined "to extend aider and abettor liability to breaches of fiduciary duty [ ] concluding that Georgia courts would not recognize such a cause of action." Id. at 613 (citation omitted). To hold otherwise, according to Munford, "would enlarge the fiduciary obligations beyond the scope of a confidential or special relationship." Id.
More recently, in Monroe v. Regents of the Univ. Sys. of Georgia, 602 S.E.2d 219 (Ga.App.2004), the Georgia Court of Appeals declined to recognize a cause of action for aiding and abetting a breach of fiduciary duty under Georgia law. Id. at 224-25. The Court of Appeals is Georgia's intermediate appellate court. The plaintiff in Monroe brought suit for the denial of healthcare benefits during the period his wife, who suffered from Parkinson's disease, resided in a nursing home. Id. at 219. On appeal, he argued that the trial court erred in dismissing his breach of fiduciary duty claim against his wife's insurance *318 plan because the plan administrator had aided and abetted the plan's breach of fiduciary duty. Id. at 223-24. The Monroe court labeled the aiding and abetting claim "novel" and observed that "Georgia has never recognized a claim for aiding and abetting a breach of fiduciary duty." Id. at 223-24. It declined to recognize "such a new cause of action on the record before us." Id. at 224-25.
The Weinstein Plaintiffs claim that Time Warner Entertainment Co. v. Six Flags Over Georgia, 245 Ga.App. 334, 537 S.E.2d 397 (2000), vacated on other grounds, recognized a cause of action for aiding and abetting a breach of fiduciary duty.[18]Monroe found otherwise.
Time Warner observed that Georgia courts had "implicitly" acknowledged the viability of an aiding and abetting breach of fiduciary duty claim in Williams v. Service Corp., 218 Ga.App. 10, 459 S.E.2d 621 (1995), and U3S Corp. v. Parker, 202 Ga.App. 374, 414 S.E.2d 513 (1992). Time Warner, 537 S.E.2d at 407. These two cases, however, predate both Munford and Monroe and neither analyzed the viability of such a claim.[19]Time Warner then listed those discrete torts for which Georgia courts have recognized an aiding and abetting claim, and observed that if it were required to address the issue it could find a cause of action for aiding and abetting a breach of fiduciary duty to be implicit in a Georgia statute that addressed joint liability. Id. at 342-43. Monroe explained that "[a]lthough [Time Warner] discussed, in dicta, the potential viability of a claim for aiding and abetting liability, it stopped short of establishing such a cause of action because the issue was not properly before the Court." Monroe, 602 S.E.2d at 223-24. Since the appellants in Time Warner had not properly preserved the issue on appeal, the Time Warner court "lacked jurisdiction" to rule. Monroe, at 223-24.[20] "Thus, even after Time Warner, Georgia has never recognized a claim for aiding and abetting a breach of fiduciary duty." Monroe, 602 S.E.2d at 223-24.
Because Georgia does not recognize a claim for aiding and abetting a breach of fiduciary duty, the claims against Andersen and the SSB Defendants are dismissed. The only remaining claims are brought against the Director Defendants.
Claims on Behalf of "Holders"
A "holder" action is an action in which the plaintiffs allege that material misrepresentations or omissions caused them to retain ownership of securities that *319 they acquired prior to the alleged wrongdoing. Georgia has never recognized a cause of action for "holders" of securities and, in the face of the strong policy reasons against recognition of such a claim, and the weight of authority in other jurisdictions either rejecting or severely limiting such a claim, there is no basis to predict that it will do so.
Because of the inherent difficulty of proving reliance and damages in such actions, as well as the potential for non-meritorious suits brought merely to extract a settlement, over a quarter of a century ago, the Supreme Court in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), held that "holders" of securities were not entitled to sue under Section 10(b) of the Exchange Act. Id. at 749, 95 S.Ct. 1917. Confirming the wisdom of the Birnbaum rule, named after the mid-century decision of the Second Circuit in Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.1952), the Supreme Court described the several policy reasons that weighed against a claim that would rely largely on a plaintiff's "oral version of a series of occurrences." Blue Chip Stamps, 421 U.S. at 742, 95 S.Ct. 1917. Because a "holder" claim is not "verifiable by documentation" and depends entirely on "oral recollection," a "holder" cause of action is likely to encourage frivolous and "vexatious litigation" that is difficult to resolve on the merits without a trial. Id. at 742-43, 95 S.Ct. 1917. Permitting "holder" claims would "throw open to the trier of fact many rather hazy issues of historical fact the proof of which depended almost entirely on oral testimony" about largely conjectural and speculative damages. Id.
It does not appear that Georgia courts have addressed the issue presented by these motions. In two individual actions brought under Georgia's securities statute, Georgia courts have held that a plaintiff must have been a purchaser of stock to bring suit. Bell v. Sasser, 238 Ga.App. 843, 520 S.E.2d 287, 293 (1999); Mack v. Smith, 178 Ga.App. 652, 344 S.E.2d 474, 475 (1986). Mack also recognized that Blue Chip Stamps deprives a plaintiff who did not purchase securities of standing to bring a federal securities law claim. Mack, 344 S.E.2d at 475. As the Weinstein Plaintiffs concede, Georgia has never permitted "holder" claims for common law causes of action, and the Weinstein Plaintiffs have submitted no persuasive authority that it would do so if confronted with the instant case.[21]
Courts in other jurisdictions have rejected common law claims by "holders" for a variety of reasons. Applying Connecticut law, the court in Chanoff v. United States Surgical Corp., 857 F.Supp. 1011 (D.Conn.1994), aff'd, 31 F.3d 66 (2d Cir.1994), found that "claims for damages based on the plaintiffs' failure to sell or hedge their stock are too speculative to be actionable." Chanoff, 857 F.Supp. at 1018. Chanoff observed that "holder" claims violate the "established principle that a plaintiff cannot recover profits which might have been realized if he had not been deceived, unless there is evidence by which such profits can *320 be estimated with reasonable certainty." Id. (citation omitted).
Other jurisdictions have relied on principles of loss causation to reject "holder" claims. They have reasoned that those who hold securities during the fraud are unable to plead that the misrepresentations caused their loss, and have dismissed the common law claims. As the Fifth Circuit explained, had accurate information been disclosed, in lieu of the alleged misrepresentations, an entire class of shareholders would have dumped their stock and "there would have been no market for the stock at the artificially high price." Crocker v. Federal Deposit Ins. Corp., 826 F.2d 347, 351 (5th Cir.1987) (applying Mississippi law). See also Sit-Set, A.G. v. Universal Jet Exch., Inc., 747 F.2d 921, 928-29 (4th Cir.1984) (applying Virginia law); Kagan v. Edison Bros. Stores, Inc., 907 F.2d 690, 692 (7th Cir.1990) (applying Illinois law); Arnlund v. Deloitte & Touche LLP, 199 F.Supp.2d 461, 488 (E.D.Va.2002) (applying Virginia law); Chanoff, 857 F.Supp. at 1018 (dismissing "holder" claim on alternative basis that there is no cognizable loss).
Recently, the Delaware Court of Chancery dismissed a purported class action brought on behalf of "holders" alleging violations of Delaware law because of the impossibility of proving reliance by the class. Manzo v. Rite Aid Corp., No. Civ. A. 18451-NC, 2002 WL 31926606 (Del.Ch. Dec.19, 2002) (applying Delaware law) (unpublished opinion[22]). Since Delaware does not recognize a presumption of reliance, such as the fraud on the market theory available for federal Section 10b-5 claims, Manzo held that the requirement that the plaintiff plead and prove reliance was fatal to the common law claims. Id. at *4. "[W]here the claim stated cannot by its nature form the basis of a class action,... it is appropriate to dismiss the claim as to the purported class under Rule 12(b)(6)." Id.
The few courts that have recognized common law "holder" class action claims impose heightened pleading standards on plaintiffs and require them to allege specific reliance on the alleged misrepresentations by defendants. See Rogers v. Cisco Sys. Inc., 268 F.Supp.2d 1305 (N.D.Fla.2003); Small v. Fritz Companies, Inc., 30 Cal.4th 167, 132 Cal.Rptr.2d 490, 65 P.3d 1255 (2003).
In Rogers, the court dismissed plaintiffs' common law "holder" claims brought under Florida law on behalf of a purported class for failing to allege how many shares plaintiffs would have sold and when they would have sold them. Rogers, 268 F.Supp.2d at 1314. In Rogers, plaintiffs alleged that had reviewed defendants' reports and statements, and had "refrained from selling their stock" in reliance on the information contained therein. Id. They further contended that if they had known the true state of the defendants' financial position, they would have sold their shares "before the collapse in prices." Id. Noting that it was questionable that Florida would accept a presumption of reliance, Rogers found these allegations "too vague" to satisfy the reliance requirement in a "holder" claim. Id. The purpose of the "heightened burden of pleading reliance" is to separate "plaintiffs who actually and justifiably relied upon the misrepresentations from the general investing public, who, though they did not so rely, suffered the loss due to the decline in share value." Id. at 1314 n. 18.
Similarly, the California Supreme Court in Fritz found that California law permitted "holder" claims on behalf of a putative *321 class if they meet a heightened pleading standard for the element of reliance. Fritz, 132 Cal.Rptr.2d 490, 65 P.3d at 1265.[23] In particular, Fritz held
in view of the danger of nonmeritorious suits [ ] conclusory language does not satisfy the specificity requirement. In a holder's action a plaintiff must allege specific reliance on the defendants' representations: for example, that if the plaintiff had read a truthful account of the corporation's financial status the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place. The plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations. Plaintiffs who cannot plead with sufficient specificity to show a bona fide claim of actual reliance do not stand out from the mass of stockholders who rely on the market.... [S]uch persons cannot bring individual or class actions for fraud or misrepresentation.
Id. (citation omitted) (emphasis supplied).
Two other cases, bringing individual as opposed to class actions, have allowed common law claims by "holders" of securities to proceed where there were allegations of direct communications and specific reliance. In analyzing the law of New York and New Jersey, the court in Gutman v. Howard Sav. Bank, 748 F.Supp. 254 (D.N.J.1990), found that an individual "plaintiff may state a common law fraud claim against a defendant whose misrepresentations caused plaintiff to hold securities which plaintiff otherwise would have sold." Id. at 263. In Gutman, however, plaintiffs alleged repeated, face-to-face contact with the defendants during which defendants made verbal and written misrepresentations. Id. at 258-60. Gutman expressly limited "holder" claims to situations involving such direct communication.
One critical feature of the present case is generally absent from the securities market as described in Blue Chip Stamps. Plaintiffs had direct dealings with defendants in which the latter made certain of the representations complained of. This case is, therefore, an `ordinary case of deceit' as characterized by the Supreme Court in that defendants made representations directly to plaintiffs. Such a case could not be brought by anyone who happened to own Howard stock at any time from April to December 1989.
Id. at 266 (citation omitted) (emphasis supplied).
In Shirvanian v. Defrates, ___ S.W.3d ___, No. 14-02-00447-CV, 2004 WL 35987 (Tex.App. Jan.8, 2004), the Texas Court of Appeals found that individual "holders" claims may be brought under the Texas common law of fraud when the misrepresentations were made in "direct, face-to-face or telephone" conversations and when plaintiffs have adequately alleged that "they had a specific plan to sell their shares at a date certain." Id. at *18.[24] Recognizing the principles enunciated in Blue Chip Stamps, it distinguished its *322 holding as one that "will always have a very narrow pool of plaintiffs. We are not dealing with `complete bystanders.' The [plaintiffs] were the largest individual shareholders of [the defendant]." Id.
The analysis in these actions does not provide a basis to predict that the Georgia Supreme Court would recognize a cause of action for a class of plaintiffs who are alleged to have held their stock in reliance on misrepresentations or omissions. Even if Georgia were to adopt a rule similar to that set forth in Rogers and Fritz, as just discussed, that rule would require allegations of specific reliance. The Weinstein Plaintiffs do not even attempt to defend their meager allegations of reliance and damages. Their brief, conclusory statements would not be sufficient to plead reliance under the narrow exception that is articulated by Rogers and Fritz to the general bar against "holder" claims.
There is only one case that provides some support for the Weinstein Plaintiffs' pleadings. After briefing on these motions was completed, the Weinstein Plaintiffs supplemented their defense of their action by a submission describing an unreported opinion in an Illinois state trial court, Gordon v. Buntrock, No. 99 CH 18378 (C.C.Ill. July 19, 2004). In Gordon, the Chancery Division of the Circuit Court of Cook County, Illinois granted a motion to dismiss, with leave to replead, a shareholder class action complaint brought on behalf of plaintiffs who had held stock in anticipation of future appreciation in the stock's value. The complaint pleaded common law claims under Illinois law. Id. at *6. The court held that Illinois law had long recognized a claim for fraud where the wrongdoer intends to induce a plaintiff to refrain from action. Id. at *6-7. After reviewing Blue Chip Stamps and various state court decisions from other jurisdictions, the court held that Illinois' liberal pleading rules did not permit it to impose a heightened pleading requirement of reliance or transaction causation; for instance, the requirement that the complaint allege that misrepresentations were made in direct communications to a plaintiff. Id. at *13-14. It recognized that its holding meant that "the goal of precluding the filing of `strike suits' remains unattainable." Id. at *14. The plaintiff was given leave to replead to allege an out of pocket loss, which the court defined as the difference between the stock price on his date of purchase and the date on which the fraud began. Id. at *15.
The ruling in Gordon, of course, defers until a later day the issue of class certification. If the Illinois Supreme Court ultimately decides that there is no heightened pleading requirement for reliance in a "holder" action under Illinois law, and if Illinois requires common issues in a class action to predominate over individual ones and does not recognize a presumption of reliance, then certification of a class like the Gordon class will prove to be impossible.[25]
There are only two other cases on which the Weinstein Plaintiffs rely that require discussion. The Weinstein Plaintiffs argue that Malone v. Brincat, 722 A.2d 5 (Del.1998), endorses a class action by "holders," at least when there is an allegation of a breach of fiduciary duty. It does not. Malone expanded the circumstances in which there is a judicially imposed duty of candor to shareholders under Delaware law. It held that such a duty exists under Delaware law "even in the absence of a request for shareholder action." Id. at 14. The Malone court permitted plaintiffs to *323 replead to clarify whether they were bringing a derivative action, which appeared likely, individual claims for the named plaintiffs, or a class action. Id. at 14-15. To the extent that they sought to bring a class action for damages, Malone emphasized that the action had to conform with Rule 23 of the Court of Chancery and the decision in Gaffin v. Teledyne, Inc., 611 A.2d 467, 474 (Del.1992), which held that a class action could not proceed in a fraud case because issues of reliance would necessarily predominate over common questions since a presumption of reliance was unavailable on common law claims. Malone, 722 A.2d at 14 and n. 47; see also In re Enron Corp. Sec., Derivative & ERISA Litig., MDL-1446, H-03-862, slip op. at 24-26 (S.D.Tex. Jun. 14, 2004); Metro Communication Corp. BVI v. Advanced Mobilecomm Techs. Inc., 854 A.2d 121, 158 n. 89 (Del.Ch.2004) (requiring allegations of "reasonable reliance" on the defendants' communications in order to assert a Malone claim). Malone, therefore, provides little comfort for the Weinstein Plaintiffs.
The last case on which the Weinstein Plaintiff rely that requires discussion is In re Mercury Finance Co., 249 B.R. 490 (Bankr.N.D.Ill.2000). In Mercury Finance, the bankruptcy court affirmed an arbitration award that allocated distribution of limited trust assets among six shareholder claimant classes, including a "holder" class. Mercury Finance found that the arbitrator did not abuse his discretion in allocating the trust's assets on a "relative deservedness, or fairness, basis." Id. at 503. The arbitrator had concluded that although the holder claims "may be `novel or difficult to prove,'" they had a "`substantial settlement value.'" Id. at 500. During the arbitration, counsel for the class asserting federal securities law claims had admitted that the holder class had suffered "`big damages'" because of a breach of law. Id. at 502. Thus, Mercury Finance did not address the adequacy of a pleading of a class action "holder" claim.
In sum, there is no basis to predict that the Georgia Supreme Court would permit the Weinstein Plaintiffs'"holder" claims on behalf of a putative nationwide class to go forward. The Weinstein Plaintiffs have pointed to no precedent in Georgia jurisprudence that would suggest such an outcome. Many other jurisdictions that have considered "holder" claims based on their common law have rejected them because of the inherent difficulty in pleading and proving reliance, loss causation, and/or damages. With one exception, those few jurisdictions that have recognized the claim, have imposed heightened pleading requirements that are virtually impossible to meet in the context of a class action. Given the weight of this authority, and the sound policy reasons that underlie these decisions, there is no basis to predict that Georgia would strike out on a different path and countenance this lawsuit.
Conclusion
The Weinstein Plaintiffs' second corrected amended class action complaint is dismissed with prejudice.[26] The Clerk of Court shall close the case.
SO ORDERED.
NOTES
[1] The Director Defendants consist of: James C. Allen, Judith Areen, Carl Aycock, Max E. Bobbitt, Francesco Galesi, Clifford L. Alexander, Jr., Stiles A. Kellett, Jr., Gordon S. Macklin, John Porter, Bert C. Roberts, the Estate of John W. Sidgmore, and Lawrence Tucker.
[2] The SSB Defendants include Citigroup Global Markets Inc. (f/k/a Salomon Smith Barney Inc.) and Jack Grubman.
[3] See, e.g., In re WorldCom, Inc. Sec. Litig., 294 F.Supp.2d 392 (S.D.N.Y.2003) (deciding motions to dismiss the consolidated class action complaint based on federal law claims); In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267 (S.D.N.Y.2003) (certifying that consolidated class action); In re WorldCom, Inc. Sec. Litig., 294 F.Supp.2d 431 (S.D.N.Y.2003) (deciding a motion to dismiss claims in an individual action which had been consolidated for pre-trial purposes with the consolidated class action).
[4] The WorldCom debacle has also generated claims for violations of the Employment Retirement Income Security Act ("ERISA"). The ERISA lawsuits are consolidated and referred to as the ERISA Litigation.
[5] The Class Complaint asserts claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act"), and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). See In re WorldCom, Inc. Sec. Litig., 294 F.Supp.2d at 398 (largely denying motions to dismiss). Opinions of June 25 and December 3, 2003 also addressed motions to dismiss the Class Complaint claims against Andersen and its affiliates and partners, and claims against the Audit Committee of WorldCom's Board of Directors. See In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288(DLC), 2003 WL 21488087 (S.D.N.Y. June 25, 2003); In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288(DLC), 2003 WL 23174761 (S.D.N.Y. Dec.3, 2003).
[6] Pursuant to the May 28 Order, the Weinstein Plaintiffs were required to amend their complaint no later than July 11, 2003.
[7] These dates track the class period in the Class Action.
[8] The named plaintiffs are residents of Maryland and Mississippi. Many of the alleged acts, transactions, and omissions described in the Amended Complaint took place outside of Georgia.
[9] The extent to which the Weinstein Plaintiffs have relied on the pleadings in the Class Action can be seen from the Opinions addressing the motions to dismiss the Class Complaint. See In re WorldCom, Inc. Sec. Litig., 294 F.Supp.2d at 398 (motion by Bernard J. Ebbers ("Ebbers"), the Underwriter Defendants, and the SSB Defendants); In re WorldCom, Inc. Sec. Litig., 2003 WL 21488087 (motion by Andersen); In re WorldCom, Inc. Sec. Litig., 2003 WL 23174761 (motion by Audit Committee Director Defendants).
[10] WorldCom had entered into long-term lease agreements with other telecommunications companies for the use of their networks. Pursuant to these leases, WorldCom was obligated to make fixed monthly payments for the use of the networks, or lines, regardless of whether WorldCom or its customers in fact used the leased lines. When demand did not grow as WorldCom had hoped, the company found itself with substantial fixed line costs for networks that were not generating any income. See In re WorldCom, Inc. Sec. Litig., 2003 WL 21488087, at *3.
[11] Sullivan pled guilty on March 2, 2004 to criminal violations of the federal securities laws for his role in the WorldCom fraud. Ebbers was indicted on March 1. In addition, WorldCom's Controller and Director of General Accounting, Buford Yates, Jr. and David. F. Myers, have each pleaded guilty to securities fraud and filing false statements with the SEC. The civil actions against these four men have been stayed.
[12] Except for defendants Alexander, Porter, and Tucker, it is alleged that each of the Director Defendants signed WorldCom's annual SEC 10-K filings for each of the years 1999-2001. The allegation against Alexander is that he signed only the 10-K filings for 1999 and 2000. Porter and Tucker allegedly only signed the 1999 10-K.
[13] WorldCom's 10-K filings all contained a clean audit opinion from Andersen.
[14] In an Opinion of December 3, 2003, the securities fraud claims against certain Director Defendants, including members of the Board of Director's audit committee were dismissed. In re WorldCom, Inc. Sec. Litig., 2003 WL 23174761. The Class Complaint failed adequately to allege scienter based on the purported failure to communicate either with the corporation's internal audit department or outside auditor. Id. at *5-6. The Class Complaint did not describe with particularity how the audit committee failed to review documents it had a duty to review or to perform any of the general tasks that SEC filings described it doing. Id. At bottom, the Class Complaint simply contended that committee members should have done their jobs better than they did. Id.
[15] There are two cases currently pending in the United States Court of Appeals for the Second Circuit, Davit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 03-7499, and IJG Invs. L.P. and Irlys Guy v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 03-7458, which address whether the "in connection with" language in SLUSA should be read narrowly not to exclude actions in which plaintiffs do not allege a specific purchase or sale in their complaint. The SEC has filed an amicus brief in these appeals arguing that SLUSA should be interpreted broadly to preempt many such actions.
[16] WorldCom emerged from bankruptcy on April 20, 2004, under the name MCI, Inc.
[17] The Weinstein Plaintiffs assert that Georgia law governs each of their claims including the cause of action for aiding and abetting a breach of fiduciary duty. While none of the defendants take a position on which state's law should govern the aiding and abetting a breach of fiduciary duty claim in particular, the SSB Defendants, at the hearing on April 16, and the Director Defendants, in their papers in support of their motion to dismiss, argue that applying solely Georgia law to the Weinstein Plaintiffs' claims is untenable because, among other reasons, most of the alleged improprieties occurred outside of Georgia and members of the purported nationwide class of "holders" likely live in states other than Georgia. Because the Weinstein Plaintiffs seek to bring this action for a nationwide class under the laws of WorldCom's state of incorporation and the law of no other jurisdiction, for the purposes of these motions to dismiss, the viability of each of their claims will be analyzed under Georgia law.
[18] The Weinstein Plaintiffs' reliance on Paul v. Destito, 250 Ga.App. 631, 550 S.E.2d 739, 742 (2001), and Madden v. Fulton Co., 102 Ga.App. 19, 115 S.E.2d 406 (1960), is also unavailing. Paul focuses on liability for conspiracy to breach fiduciary duty. Paul, 550 S.E.2d at 742. Madden did not even include a breach of fiduciary duty claim. In dicta, it described in general terms Restatement of Law of Torts principles concerning liability for persons "acting in concert." Madden, 115 S.E.2d at 409. The distinction between an allegation of conspiracy and of aiding and abetting was important to the court in Chepstow Ltd. v. Hunt, 381 F.3d 1077 (11th Cir.2004), when it dismissed a claim brought under Georgia law for aiding and abetting a fraudulent transfer of assets, but declined to dismiss a claim for conspiracy to do so. Id. at 1088-90.
[19] The complaint in Williams included a claim for aiding and abetting a breach of fiduciary duty, but that claim was not addressed in Williams. Williams, 459 S.E.2d at 621-22. U3S Corp., observed without analysis that one of the issues remaining for trial was allegations that defendants aided and abetted other defendants' breach of fiduciary duty. U3S Corp., 414 S.E.2d at 518. U3S Corp. concerned a breach of an employment contract that contained a non-compete clause. Id. at 514.
[20] A member of the appeals panel in Time Warner, the Honorable John H. Ruffin, was also a member of the Monroe panel.
[21] The Weinstein Plaintiffs' claim that Paul, 250 Ga.App. 631, 550 S.E.2d 739, supports its contention that Georgia would recognize a claim on behalf of a nationwide class of "holders." Paul, however, was not a securities "holder" action and there were no allegations that the plaintiff in Paul relied on misrepresentations by the defendants in deciding to retain ownership of his shares. In Paul, a corporate insider in a private corporation sued other corporate officers and directors for failing to disclose their fraud to him. Id. at 744-45. Paul recognized in passim that an element of a traditional face-to-face fraud claim includes a defendant acting with intent to induce the plaintiff "to act or refrain from acting." Id. at 744.
[22] No provision under the Delaware Rules of Court restricts the citation of its unpublished opinions for precedential value. See Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co. Ltd., 339 F.3d 101, 115 n. 14 (2d Cir.2003).
[23] Because of "the potential for false claims," Fritz applied the heightened standard of pleading to not only the fraud claim, but also the negligent misrepresentation claim. Fritz, 132 Cal.Rptr.2d 490, 65 P.3d at 1265.
[24] The only available opinion in Shirvanian, is preceded by this admonition: "Notice: this Opinion has not been released for publication in the permanent law reports. Until released, it is subject to revision or withdrawal." While the Westlaw version of Shirvanian contains the citation" ___ S.W.3d ___", which typically indicates that the opinion will be published in that reporter, the document does not appear to have been published yet in any printed law reporter.
[25] Under Georgia law, questions of law and fact common to the class members must predominate over any individual questions. See McGarry v. Cingular Wireless, LLC, 267 Ga.App. 23, 599 S.E.2d 34, 35 (2004)
[26] The litigation as to four defendants has been stayed, and as a result, they have not joined in these motions to dismiss. The rulings in this Opinion apply equally to the claims against all defendants. There is no reason, therefore, to delay the dismissal of the entire action.