Gary B. FILLER and Lawrence Perlman, Trustees of the TRA Rights Trust Plaintiffs,

v.

HANVIT BANK, Shinhan Bank, and Chohung Bank Defendants.

Janet Baker, James Baker, Jkbaker LLC, and Jmbaker LLC, Plaintiffs,

v.

Hanvit Bank, Shinhan Bank, and Chohung Bank Defendants.

Nos. 01 Civ.9510 MGC, 02 Civ.8251 MGC.

United States District Court, S.D. New York.

Oct. 13, 2004.

Gregory P. Joseph Law Offices LLC, New York, New York, By: Gregory P. Joseph, Pamela Jarvis, Honey L. Kober, Sandra M. Lipsman, Douglas J. Pepe, for Plaintiffs Gary B. Filler and Lawrence Perlman, Trustees of the TRA Rights Trust.

Boies, Schiller & Flexner, LLP, New York, New York, By: Steven I. Froot, Karen C. Dyer, George R. Coe, Gregory S. Slemp, for Plaintiffs Janet Baker, James Baker, JKBaker LLC and JMBaker LLC.

Squire, Sanders & Dempsey LLP, New York, New York, By: Daniel L. Brockett, Mark C. Dosker, Rebecca W. Haverstick, for Defendant Chohung Bank.

Sidley Austin Brown & Wood LLP, New York, New York, By: Steven M. Bierman, Alan M. Unger, Daniel A. McLaughlin, Allen C. Kim, for Defendant Hanvit Bank, of counsel.

Kelley Drye & Warren LLP, New York, New York, By: Thomas B. Kinzler, William A. Escobar, for Defendant Shinhan Bank.

## OPINION

CEDARBAUM, District Judge.

Defendants move to dismiss the complaints in these two related actions. For the following reasons, the motions are granted.

## BACKGROUND

These actions arise from the collapse in November 2000 of Lernout & Hauspie Speech Products N.V. ("L & H Belgium"), a Belgian corporation which developed speech recognition software. Plaintiffs Filler and Perlman ("the Filler plaintiffs") are trustees of the TRA Rights Trust, which is the sole successor in interest to Seagate Technology, Inc. ("Seagate"). Seagate owned shares in Dragon Systems, Inc. which were worth approximately $170 million. Plaintiffs Janet Baker, James Baker, JKBaker LLC, and JMBaker LLC ("the Baker plaintiffs") collectively owned a majority of the shares of Dragon Systems. On March 27, 2000, Dragon Systems, certain of its principal shareholders (including plaintiffs), and L & H Belgium entered an Agreement and Plan of Merger by which Dragon's shareholders received L & H Belgium stock in exchange for the merger of Dragon into a subsidiary of L & H Belgium. The merger closed on June 7, 2000.

Defendants Hanvit Bank,[1] Shinhan Bank, and Chohung Bank are three Korean banks which plaintiffs allege assisted L & H Belgium in a scheme to defraud its investors. L & H Belgium issues consolidated financial statements which incorporate the financial data of its subsidiaries, including Lernout & Hauspie Korea ("L & H Korea"). The complaints allege that shortly after L & H Belgium acquired L & H Korea in September 1999, the subsidiary began executing enormous contracts to license software to Asian companies. These companies, plaintiffs contend, were either start-up corporations or entities which were too small to be able to pay what they would owe to L & H Korea under the contracts. The complaints allege that Hanvit, Shinhan, and Chohung were aware that these contracts were essentially shams. Nevertheless, Hanvit and Shinhan contracted with L & H Korea to purchase, or "factor," L & H Korea's accounts receivable—the money owed to L & H Korea by its licensees under these contracts. These factoring agreements stated that defendants agreed to purchase the accounts receivable "without recourse"—that is, Hanvit and Shinhan agreed to assume the full risk of collecting the money owed to L & H Korea. However, according to the complaints, L & H Korea and defendants executed side agreements which changed the terms of the factoring agreements so that the banks' purchase of the accounts receivable would actually be "with recourse," meaning that L & H Korea would retain the risk of collection. To this end, Hanvit and Shinhan retained in restricted accounts the money which they "paid" L & H Korea for its accounts receivable. The complaints allege that the structure of the transaction with defendant Chohung was slightly different. Chohung provided L & H Korea with a phony secured loan agreement but retained the loaned funds in a restricted account. All of these transactions, according to plaintiffs, enabled L & H Korea to report nonexistent revenue in its financial statements, which were incorporated into L & H Belgium's financial statements.

The complaints also allege that during the last quarter of 1999 and the first quarter of 2000, as part of its global audit of L & H Belgium, KPMG sought information from defendants regarding the factoring agreements and L & H Korea funds deposited in defendant banks. According to the complaints, defendants signed documents prepared by individuals at KPMG and L & H Korea which falsely confirmed to KPMG that the money which the banks had paid to L & H Korea pursuant to the factoring agreements (or, in Chohung's case, pursuant to the secured loan) was held in unrestricted accounts of L & H Korea. These representations by defendants, plaintiffs allege, enabled L & H Belgium falsely to inflate its revenues and earnings on its financial statements, and thus defraud its investors, including plaintiffs, who relied on L & H Belgium's financial statements and on assurances from KPMG when consummating the Dragon merger. When L & H Belgium collapsed, as a result of the disclosure of this and other frauds throughout the company, defendants retained the money which they had "paid" to L & H Korea for the accounts receivable (or, in Chohung's case, the money which the bank had purportedly advanced as a loan).

The Filler plaintiffs' original complaint included various federal and state claims based on these allegations. On February 26, 2003, I granted defendants' motion to dismiss the Filler plaintiffs' amended com-

---

**1.** Hanvit Bank is now known as Woori Bank. Since the complaints continue to refer to Hanvit Bank, that name is used throughout this opinion.

plaint for, among other things, failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b). *See Filler v. Hanvit Bank,* 247 F.Supp.2d 425 (S.D.N.Y.), *vacated in part on other grounds,* 01 Civ. 9510 and 02 Civ. 8251, 2003 WL 21729978 (S.D.N.Y. July 25, 2003). The Filler plaintiffs filed a second amended complaint which, with the Baker plaintiffs' complaint (which contained only state-law claims), was dismissed on September 12, 2003, again for failure to plead fraud with particularity. *See Filler v. Hanvit Bank,* 01 Civ. 9510, 02 Civ. 8251, 2003 WL 22110773 (S.D.N.Y. Sept.12, 2003). Plaintiffs were permitted to replead their claims of aiding and abetting common-law fraud and conspiracy to defraud. They have done so, the Filler plaintiffs in a third amended complaint, and the Baker plaintiffs in an amended complaint.

## DISCUSSION

A federal court adjudicating a motion to dismiss must accept as true all facts alleged in the complaint and draw all reasonable inferences in the plaintiffs' favor. *See King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). A court may dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint. *Olkey v. Hyperion 1999 Term Trust, Inc.,* 98 F.3d 2, 5 (2d Cir. 1996) (quoting *I. Meyer Pincus & Assoc. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir.1991)) (internal quotation marks omitted). Fed.R.Civ.P. 9(b) requires a party averring fraud to state with particularity "the circumstances constituting [the] fraud."

I. *Aiding and Abetting Common–Law Fraud*

■ To state a claim for aiding and abetting fraud under New York law, a plaintiff must show: (1) the existence of an underlying fraud; (2) that the defendant had knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the commission of the fraud. *Wight v. Bankamerica Corp.,* 219 F.3d 79, 91 (2d Cir.2000). Claims of aiding and abetting common-law fraud are subject to Fed.R.Civ.P. 9(b). *See Renner v. Chase Manhattan Bank,* 98 Civ. 926, 2000 WL 781081, at *5 (S.D.N.Y. June 16, 2000).

■ A defendant substantially assists the commission of a fraud when it "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed," and when its "actions ... proximately cause[ ] the harm on which the primary liability is predicated." *Cromer Fin. Ltd. v. Berger,* 137 F.Supp.2d 452, 470 (S.D.N.Y.2001) (citations omitted).

■ With regard to the knowledge requirement, courts have held that to state an aiding and abetting claim, the complaint must allege facts which show that the defendant had actual knowledge of the underlying fraud. *See Steed Finance LDC v. Laser Advisers, Inc.,* 258 F.Supp.2d 272, 282 (S.D.N.Y.2003). Constructive knowledge of the primary fraud—the possession of information which would cause a person exercising reasonable care and diligence to become aware of the fraud—is not sufficient to support an aiding and abetting claim. *See Williams v. Bank Leumi Trust Co.,* 96 Civ. 6695, 1997 WL 289865, at *5 (S.D.N.Y. May 30, 1997).

■ The allegations of the complaints, if true, demonstrate that defendants aided and abetted L & H Korea in the falsification of its revenues and knowingly transmitted false information to KPMG regarding L & H Korea's accounts. However, L & H Korea's fraudulent inflation of its

revenues is not the primary fraud complained of in this case. Rather, plaintiffs allege that they were injured by L & H Belgium's fraudulent misrepresentations, which were transmitted to plaintiffs through L & H Belgium's audited financial statements, filings with the Securities and Exchange Commission, press releases, and statements made to plaintiffs by L & H Belgium and by KPMG on L & H Belgium's behalf. Plaintiffs allege that they relied on these misrepresentations to their detriment when deciding to consummate the merger. While the complaints demonstrate that L & H Korea appears to have played a critical role in those misrepresentations, plaintiffs do not assert that L & H Korea's fraud directly injured them, or that the parent and subsidiary should be regarded as one entity, such that the acts of the latter are attributable to the former. Therefore, it is not enough for plaintiffs to show that defendants knowingly assisted L & H Korea's fraud; plaintiffs must show that Hanvit, Shinhan, and Chohung knowingly and substantially assisted in L & H Belgium's fraudulent misrepresentations.

The complaints allege that Hanvit, Shinhan, and Chohung knew that L & H Korea's financial statements were consolidated with L & H Belgium's financial statements, and that L & H Belgium was a publicly held company which issued public releases of its financial statements upon which prospective investors would rely. The complaints also assert that as L & H Korea's bankers, defendants would have received L & H Belgium's financial statements and press releases, and therefore would have been aware of the effects of their activities on the parent company's public disclosures. Plaintiffs also allege that defendants knew that the purpose of the KPMG audit was to prepare L & H Belgium's financial statements and public disclosures.

These allegations demonstrate, at best, that defendants should have known the impact of the factoring agreements and the false confirmations on L & H Belgium's financial statements. They do not support an inference that defendants actually knew that L & H Belgium was attempting to defraud its investors. From defendants' perspective, L & H Belgium could have been the victim or unwitting conduit of L & H Korea's fraud as easily as it could have been the perpetrator of a fraud upon others. While plaintiffs have alleged other facts indicating that directors of L & H Belgium endorsed and participated in L & H Korea's fraud, those allegations do not support any inference regarding what Hanvit, Shinhan, and Chohung knew about L & H Belgium's role. That is the critical issue in determining whether plaintiffs state claims against defendants upon which relief can be granted.

■ Plaintiffs also argue that two payments of money by L & H Belgium to Hanvit demonstrate that defendants were aware that L & H Belgium was committing fraud. First, the complaints allege that a payment of $25 million from L & H Belgium to the president of L & H Korea, ostensibly an accelerated bonus, was actually intended to bribe defendants into assisting in the fraudulent scheme. This allegation is based on records showing that $15 million of that payment was routed through the Hanvit branch where many of the factoring agreements were executed, and on an e-mail which the president of L & H Korea sent to officers of L & H Belgium, which states: "Thanks for your great assistance extended to me. I well received the remitted amount of 25 million USD. With your prompt action, I could keep my promise to Korean banks and those banks will rely on L & H Korea and will help us much better than before." Second, plaintiffs allege that an entity con-

trolled by L & H Belgium, rather than Korean customers, paid Hanvit on some of the accounts receivable Hanvit had purchased from L & H Korea.

These allegations, which do not implicate Shinhan or Chohung at all, also fail to demonstrate that Hanvit was actually aware of the Belgian fraud. Even if plaintiffs correctly interpret the e-mail on which they premise their contention that the $25 million was a bribe intended for defendants, plaintiffs offer nothing to show that any of the banks knew that this was a bribe from L & H Belgium for participating in an L & H Belgium-run fraud, rather than a bribe from L & H Korea for defendants' assistance to that entity. Plaintiffs do not persuasively explain the significance of the allegation that some of the money was "routed through" the Hanvit Bank branch which participated in many of the allegedly phony factoring agreements. At any rate, this allegation does not establish where the money ended up or what the recipient knew about its source, let alone what Hanvit knew about the Belgian fraud. Similarly, the allegation that Hanvit was paid money by an entity controlled by L & H Belgium is not helpful, since plaintiffs do not allege that Hanvit knew that the entity was controlled by L & H Belgium. Essentially, plaintiffs argue that the fact that Hanvit received money directly from Belgium supports the contention that all of the defendants actually knew about L & H Belgium's scheme to artificially inflate its financial statements through the activities of L & H Korea. This is constructive knowledge, not actual knowledge.

■ Plaintiffs also contend that certain activities by defendants which occurred after plaintiffs consummated the merger show defendants' awareness of the L & H Belgium fraud. The complaints allege that in the fall of 2000, during an audit of L & H Korea's June 2000 financial statements,

KPMG questioned the collectibility of L & H Korea's accounts receivable. KPMG informed L & H Korea that collection of between ten and twenty percent of the accounts receivable balances would be sufficient to avoid having to record a full reserve of the balances. According to the complaints, defendants helped L & H Korea avoid the negative effects of such a disclosure. L & H Korea directed that certain of its customers' licensing agreements be transferred to third parties. L & H Korea then provided collateral so that the transferees could obtain loans from defendants. The transferees then used those loans to "pay" L & H Korea ten to twenty percent of what they owed the company. Plaintiffs also allege that at the same time, newspapers began questioning L & H Korea's business practices. In response, Hanvit attempted to cover up its role in the fraud by converting its original factoring arrangement into a personal loan to the president of L & H Korea.

Like plaintiffs' other allegations, these allegations show only defendants' interaction with L & H Korea, and show nothing of defendants' possible awareness of L & H Belgium's fraudulent activities. The amended complaints fail to connect defendants with L & H Belgium with sufficient particularity to state a claim of aiding and abetting.

■ An additional problem with plaintiffs' aiding and abetting allegations arises from a lack of clarity regarding the fraud defendants are alleged to have known about and substantially assisted. Plaintiffs were not purchasers of L & H Belgium shares on the open market. Rather, they received their shares through a negotiated transaction, the Dragon merger. In consummating the merger, the complaints allege that plaintiffs relied on the public documents described above, the integrity of the market price of L & H

Belgium stock, and specific oral and written representations by L & H Belgium and by KPMG. Plaintiffs do not allege that defendants were actually aware of the representations made to plaintiffs by L & H Belgium and KPMG. While the Baker plaintiffs allege that defendants were aware of the Dragon merger and "knew or recklessly disregarded" the fact that these plaintiffs would be relying on L & H Belgium's false information, these allegations state constructive, not actual knowledge. In other words, the underlying fraud of which defendants were allegedly aware and which they assisted is not the defrauding of these plaintiffs during the merger, but the defrauding of any investor who would have relied on L & H Belgium's financial statements. Such a broad definition of the underlying fraud is inconsistent with the other requirements of establishing aiding and abetting liability, which seek to ensure that entities already one step removed from the alleged wrongful acts are not subject to suit for unforeseeable harms in which they had no active role and from which they received no benefit. Without any allegation in the complaints which supports an inference that defendants knew that their actions would affect a non-market transaction, there is no justification for holding defendants liable for plaintiffs' injuries.

## II. *Conspiracy to Commit Fraud*

■ Conspiracy to commit fraud requires "(1) an agreement among two or more parties, (2) a common objective, (3) acts in furtherance of the objective and (4) knowledge." *Diamond State Ins. Co. v. Worldwide Weather Trading LLC*, 02 Civ. 2900, 2002 WL 31819217, at *4 (S.D.N.Y. Dec.16, 2002).

■ Plaintiffs allege that each defendant agreed with L & H Belgium and L & H Korea to enter into factoring agreements and side agreements which materially altered the terms of those factoring agreements. Plaintiffs allege that the common objective of the conspiracy was to permit L & H Belgium to publicly report significantly inflated revenues. The acts plaintiffs allege in furtherance of the conspiracy are the execution of the factoring agreements, surreptitious recourse agreements, and the false confirmations to KPMG. The allegations of knowledge are identical to those offered for the aiding and abetting claim.

In addition to the problems with plaintiffs' allegations of knowledge, plaintiffs have not alleged facts which demonstrate an agreement between each defendant and the primary wrongdoer, L & H Belgium. Plaintiffs contend that the sufficiency of a claim of conspiracy to commit fraud, unlike a fraud claim, should be measured under the general pleading standard of Fed. R.Civ.P. 8(a), rather than Fed.R.Civ.P. 9(b). *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 4 (2d Cir.1990). Even so, "the complaint must allege some factual basis for a finding of a conscious agreement among the defendants." *Id.* The only actual contact between L & H Belgium and any of the defendants is the supposed transfer of funds from an entity controlled by L & H Belgium to Hanvit. This is insufficient to support an inference that Hanvit agreed with L & H Belgium to defraud purchasers of L & H Belgium stock. Plaintiffs have offered no facts whatsoever which demonstrate a conscious agreement between the other two defendants and L & H Belgium. Again, it is not sufficient for plaintiffs to allege an agreement between each defendant and L & H Korea, because L & H Korea is not the primary wrongdoer whose fraudulent activity injured plaintiffs.

CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted.

Plaintiffs are granted leave to re-plead their claims of aiding and abetting fraud and conspiracy to commit fraud with greater specificity. "When fraud is alleged, plaintiffs must allege facts with particularity. Particularity 'means the who, what, when, where, and how: the first paragraph of any newspaper story.'" *In re Initial Public Offering Sec. Litig.*, 241 F.Supp.2d 281, 327 (S.D.N.Y.2003) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)). Specifically, plaintiffs must allege facts which will support an inference that Hanvit, Shinhan, and Chohung *each* had actual knowledge of L & H Belgium's fraudulent activities.

In view of this disposition, it is not necessary to reach defendants' arguments that these cases should be dismissed on the ground of *forum non conveniens,* and that these suits are preempted by the Securities Litigation Uniform Standards Act. SO ORDERED.