In re WORLDCOM, INC. SECURITIES LITIGATION

This Document Relates to:

New York City Employees' Retirement System, et al., Plaintiffs,

v.

Bernard J. Ebbers, et al., Defendants.

Nos. 02 Civ. 3288(DLC), 02 Civ. 8981(DLC).

United States District Court, S.D. New York.

March 29, 2005.

Neil L. Selinger, David C. Harrison, Stacey E. Blaustein, Todd Garber, Deborah Rogozinski, Lowey Dannenberg Bemporad & Selinger P.C., White Plains, NY, for Plaintiffs in New York City Employees' Retirement System, et al.

Jay B. Kasner, Susan L. Saltzstein, Steven J. Kolleeny, Skadden Arps Slate Meagher & Flom LLP, New York, NY, Thomas J. Nolan, Jason D. Russell, Los Angeles, CA, for Underwriter Defendants.

Eliot Lauer, Michael Moscato, Jacques Semmelman, Milos Naumovic, Elizabeth H. Miller, Curtis Mallet Prevost Colt & Mosley, New York, NY, for Defendant Arthur Andersen LLP.

Geoffrey S. Harper, Beth G. Jaynes, Autumn J. Hwang, Kelly R. Vickers, Fish & Richardson P.C., Dallas, TX, for Defendants James C. Allen, Judith Areen, Max E. Bobbitt, and Francesco Galesi.

Thomas J. Kavaler, David G. Januszewski, Cahill Gordon & Reindel LLP, New York, NY, for Defendants Gordon G. Macklin and Lawrence C. Tucker.

Martin London, Richard A. Rosen, Brad S. Karp, Eric S. Goldstein, Walter Rieman, Joyce S. Huang, Paul Weiss Rifkind Wharton & Garrison, New York, NY, Wilmer Cutler Pickering Hale & Dorr LLP, Peter K. Vigeland, New York, NY, for Citigroup Defendants.

### OPINION AND ORDER

COTE, District Judge.

Defendants have moved to dismiss some of the claims in this securities fraud action brought by a consortium of New York City actuarial pension funds (collectively, "NY-CERS")[1] following the collapse of WorldCom, Inc. ("WorldCom"). For the following reasons, the motions are granted in part.

---

1. The plaintiffs include the New York City Employees' Retirement System, the New York City Police and Fire Department Pension Funds, the New York City Teachers and Board of Education Retirement Systems and five variable supplements funds.

*Background* [2]

On June 25, 2002, WorldCom announced a massive restatement of its financials. Litigation asserting that WorldCom had violated the federal securities laws had already been filed in this district and assigned to this Court. With the June 25 announcement, more litigation followed.

On August 15, the WorldCom class action litigation was consolidated. On December 23, all of the actions brought on behalf of individual plaintiffs ("Individual Actions") were consolidated with the class action litigation for pretrial purposes. *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2002 WL 31867720 (S.D.N.Y. Dec.23, 2002). The consolidated litigation is referred to as the *Securities Litigation*. The Judicial Panel on Multi–District Litigation has transferred World-Com litigation pending in other federal courts to this Court, and the newly arrived cases have been consolidated into the *Securities Litigation* pursuant to the Orders of December 23 and May 29, 2003. *See In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288(DLC), 2003 WL 21242882 (S.D.N.Y. May 29, 2003).

On May 19, 2003, the motions to dismiss filed by many of the defendants in the consolidated class action were largely resolved. *WorldCom*, 294 F.Supp.2d at 392. Discovery in the *Securities Litigation* began in earnest at that point.[3] Beginning in the fall of 2003, the defendants in the *Securities Litigation* began to bring waves of motions to dismiss that addressed issues common to many of the Individual Actions.[4] The third tranche in the motions to dismiss were filed beginning on November 5, 2004. This third set of motions includes the instant motion to dismiss in the NY-CERS action. Meanwhile, on July 9, 2004, fact discovery in the *Securities Litigation* ended, except for the discovery to be taken by defendants of plaintiffs in the Individual Actions. The class action trial began on March 23, 2005.

Through the Order of May 28, 2003, all plaintiffs who had filed Individual Actions in the *Securities Litigation* were given an opportunity to amend their pleadings. The amendment had to be made by the later of July 11, 2003, or twenty-one days following the action's arrival on this Court's docket. *WorldCom*, 2003 WL

---

**2.** The history of the WorldCom litigation has been described in many prior Opinions. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 352 F.Supp.2d 472 (S.D.N.Y.2005) (Andersen's motion for summary judgment); *In re World-Com, Inc. Sec. Litig.*, 346 F.Supp.2d 628 (S.D.N.Y.2004) (Underwriter Defendants' motion for summary judgment); *In re WorldCom, Inc. Sec. Litig.*, 294 F.Supp.2d 392 (S.D.N.Y. 2003) (deciding a number of defendants' motions to dismiss); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267 (2003) (class certification). Only those facts necessary to the resolution of this motion are recited here.

**3.** The Lead Plaintiff in the class action had obtained access to certain WorldCom documents through an Order issued in November 2002. *See In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288(DLC), 2003 WL 22953645, at *2 (S.D.N.Y. Dec. 16, 2003); *In re WorldCom,*

*Inc. Sec. Litig.*, 234 F.Supp.2d 301 (S.D.N.Y. 2002).

**4.** The first tranche of motions to dismiss claims in Individual Actions were resolved through the following Opinions: *In re World-Com, Inc. Sec. Litig.*, 294 F.Supp.2d 431 (S.D.N.Y.2003); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 22790942 (S.D.N.Y. Nov.25, 2003); *In re WorldCom, Inc. Sec. Litig.*, 308 F.Supp.2d 214 (S.D.N.Y.2004). The second tranche of motions to dismiss claims in Individual Actions were resolved through the following Opinions: *In re WorldCom, Inc., Sec. Litig.*, 308 F.Supp.2d 236 (S.D.N.Y.2004); *In re World-Com, Inc. Sec. Litig.*, 308 F.Supp.2d 338 (S.D.N.Y.2004); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2004 WL 315143 (S.D.N.Y. Feb.20, 2004).

21242882, at *2. The obligation of defendants to answer or move against the complaints in the Individual Actions was stayed.

NYCERS filed its action on October 29, 2002, in New York State court. Following its removal, the action was assigned to this Court, and on March 3, 2003, the NYCERS' motion for remand was denied. *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308 (S.D.N.Y.2003). NYCERS amended its complaint on July 11, 2003. That amended complaint is the pleading against which these motions to dismiss are addressed and it is referred to hereafter as the Complaint.

Through an Order of April 19, 2004, plaintiffs in Individual Actions who wanted fact discovery in their cases to be completed by January 14, 2005, had to substantially complete their document production by May 7, 2004, and to produce electronic records by June 4, 2004. *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2004 WL 831018 (S.D.N.Y. Apr.19, 2004). NYCERS adopted this schedule.[5] On October 29, 2004, the Underwriter Defendants served a Second Set of Interrogatories on NYCERS. NYCERS responded on November 29. These responses contain information which NYCERS seeks to have the Court consider along with the Complaint as representing NYCERS' allegations against the Underwriter Defendants.

The Complaint is brought against two former WorldCom officers: Bernard J. Ebbers ("Ebbers"), the CEO, and Scott D. Sullivan ("Sullivan"), the CFO.[6] It also names as defendants four members of the Board of Directors' Audit Committee, James C. Allen, Judith Areen, Max E. Bobbitt ("Bobbitt"), and Francesco Galesi (the "Audit Committee Defendants"); four members of the Board's Compensation Committee,[7] Bobbitt, Stiles A. Kellett, Jr. ("Kellett"), Gordon S. Macklin ("Macklin"), and Lawrence C. Tucker ("Tucker") (the "Compensation Committee Defendants"); and six more members of the Board, John W. Sidgmore ("Sidgmore"), Clifford L. Alexander, Jr. ("Alexander"), Carl J. Aycock ("Aycock"), John A. Porter ("Porter"), Bert C. Roberts, Jr. ("Roberts"), and Juan Villalonga ("Villalonga") (collectively, the "Director Defendants"). Five investment banks are also named as defendants: J.P. Morgan Securities, Inc., Banc of America Securities LLC, ABN/Amro Inc., Deutsche Banc Alex. Brown, Inc. (n/k/a/ Deutsche Bank Securities, Inc.),[8] and Lehman Brothers, Inc. ("Underwriter Defendants").[9] Other investment banks that are

---

**5.** The April 19 Order further provided that a conference will be held on April 15, 2005 "to discuss a procedure for summary judgment motion practice in the Individual Actions, including the feasibility of bringing summary judgment motions in one or more representative actions." By way of memo endorsement on October 18, 2004, a revised schedule pertaining to pretrial proceedings in this action was approved. Although the April 15 conference remains in place, the memo endorsement delayed the filing of the first summary judgment motions until July 8, 2005. Such motions will be fully submitted on August 12.

**6.** The *Securities Litigation* is stayed against both of these defendants because of the criminal proceedings that are ongoing against them. Sullivan was indicted and has pleaded

guilty. Ebbers' criminal trial has just concluded.

**7.** When identifying the defendants, the Complaint only identifies Kellett as a member of the Compensation Committee. In the body of the Complaint, however, the four men are identified as members of the Compensation Committee.

**8.** Counsel for the Underwriter Defendants have moved to dismiss as to Fleet Securities Inc., but Fleet is not listed as a defendant in the Complaint.

**9.** On August 11, 2004, NYCERS stipulated to the dismissal of claims against defendants J.P. Morgan Chase & Co., Bank of America Corp., Deutsche Bank AG, Goldman Sachs Group.

listed as defendants are separately represented. They are Citigroup, Inc. and Salomon Smith Barney, Inc. ("Salomon"), who together with Jack Grubman, Salomon's lead analyst for the telecommunication industry, are referred to as the Citigroup Defendants. Finally, the Complaint brings claims against Arthur Andersen LLP ("Andersen"), WorldCom's auditor.

The Complaint contains seven claims. The first five claims are federal securities law claims. The first claim is brought pursuant to Section 11 of the Securities Act of 1933 ("Securities Act") against all defendants except Grubman. The second is brought pursuant to Section 12(a)(2) of the Securities Act against the Underwriter Defendants, CitiGroup and Salomon. The third is brought pursuant to Section 15 of the Securities Act against the Director Defendants, Ebbers, and Sullivan. The fourth is brought pursuant to Section 10(b) of the Securities Exchange Act of 1943 ("Exchange Act") against Ebbers, Sullivan, the Audit Committee Defendants, the Compensation Committee Defendants, Salomon, Grubman, and Andersen. The fifth is brought pursuant to Section 20 of the Exchange Act against the Director Defendants, Ebbers and Sullivan.

The remaining two claims are state law claims. The sixth claim is a common law fraud claim and is brought against Ebbers, Sullivan, the Audit Committee Defendants, the Compensation Committee Defendants, Salomon, Grubman, and Andersen. The seventh is a claim for aiding and abetting common law fraud and is brought against Andersen, the Underwriter Defendants, and the Citigroup Defendants.

The defendants have not moved to dismiss the three Securities Act claims.[10] Certain Director Defendants—the Audit Committee Defendants, Macklin and Tucker[11]—have moved to dismiss the Section 10(b) claim brought against them in the fourth claim. These same defendants have moved to dismiss the common law fraud claim in claim six. Salomon, Grubman, and Andersen have also moved to dismiss claim six to the extent it seeks recovery for losses sustained from holding WorldCom securities. Finally, the Underwriter Defendants, the Citigroup Defendants, and Andersen have moved to dismiss the seventh claim on the ground that New York does not recognize a claim for aiding and abetting fraud.

### Discussion

The defendants have moved to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6), Fed.R.Civ.P. To dismiss an action pursuant to Rule 12(b)(6), a court must determine that "it appears beyond doubt,

Inc., Lehman Brothers Holdings, Inc., and Citigroup, Inc. These institutions were parent companies of underwriters of WorldCom bond offerings. The stipulation was based on the reasoning in two prior Opinions entered in the *Securities Litigation. See In re World-Com, Inc. Sec. Litig.,* 308 F.Supp.2d 338 (S.D.N.Y.2004); *In re WorldCom, Inc. Sec. Litig.,* 02 Civ. 3288(DLC), 2004 WL 1097786 (S.D.N.Y. May 18, 2004). NYCERS represents that the stipulation results in the dismissal of all claims against these defendants, not just the federal law claims.

10. While Grubman has moved to dismiss the second claim, he is not named in that claim. Certain defendants have also moved to dis-

miss claims brought under Section 12(a)(2) of the Securities Act for purchases of WorldCom stock. NYCERS represents that its Section 12(a)(2) claim is limited to purchases of WorldCom notes. Finally, to the extent any defendant has sought to dismiss those portions of claims four and five that seek damages for holding WorldCom securities, NYCERS has represented that its Exchange Act claims do not seek damages for holding securities.

11. Defendants Alexander, Aycock, Kellett, Porter, Roberts, Villalonga, and Sidgmore have not moved to dismiss the Complaint. Neither have Ebbers or Sullivan, against whom the action is stayed.

even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 214 (2d Cir.2003) (citation omitted). In construing the complaint, the court must "accept[ ] as true the factual allegations in the complaint as true and draw[ ] all inferences in the plaintiff's favor." *Id.* "Given the Federal Rules' simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Rule 9(b), however, requires allegations of fraud to be stated with particularity. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir.2005). Under Rule 9(b), "malice, intent, knowledge and other conditions of mind of a person may be averred generally." Rule 9(b), Fed.R.Civ.P.; *Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 187 (2d Cir.2004). To comply with the requirements of Rule 9(b), a plaintiff alleging fraud must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id.* (citation omitted).

### 1. Motion to Strike

■ The Underwriter Defendants have moved to strike the factual allegations that NYCERS has included in its opposition to the motion. These allegations are not in the Complaint but are taken from NYCERS' sixty-three page response on November 29, 2004 to the Underwriters' Second Set of Interrogatories ("Response"). NYCERS explains that it seeks to use the information in the Response to augment its allegations that the Underwriter Defendants aided and abetted a fraud.[12]

To the extent that the Underwriter Defendants seek to strike the Response materials from the NYCERS' motion papers, that motion is denied. To the extent that the Underwriter Defendants' motion is an objection to NYCERS' reliance on material extraneous to the Complaint when defending against a motion to dismiss, that objection is well taken. In deciding a motion to dismiss, a court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004) (citation omitted). NYCERS does not contend that any material in the Response is integral to the Complaint, and it is not properly considered in evaluating the merits of the pending motions to dismiss.

■ NYCERS protests that much of the factual material in the Response is described in the Opinion of December 15, 2004, denying in part the summary judgment motion made by underwriter defendants in the class action. *WorldCom*, 346 F.Supp.2d at 628 ("Summary Judgment Opinion"). NYCERS contends that the Summary Judgment Opinion is "binding" on the Underwriter Defendants in the NYCERS action and that this Court has discretion to consider the Summary Judgment Opinion and the facts upon which it was based when ruling on the motion to dismiss.

**12.** Given the legal arguments presented by the parties in their briefs on this motion, it does not appear that consideration of the material in the Response would have any impact in any event on the outcome of these motions.

The Summary Judgment Opinion addressed the due diligence defense of underwriters in the context of strict liability claims under the Securities Act and also reviewed the evidence concerning the asserted material omissions from registration statements which underlie those Securities Act claims. It did not address any fraud-based claims; no fraud claims were ever brought in the class action against any of the underwriters who moved for summary judgment. Thus, to the extent that NYCERS is making an argument akin to issue preclusion, it must be rejected.

■ In the alternative, NYCERS asks that the Court convert the Underwriter Defendants' motion into a motion for summary judgment and defer the motion until April 15, 2005, when a conference is scheduled to be held on the summary judgment motions in the Individual Actions. There is already a schedule for summary judgment motions in the NYCERS action; they will be filed on July 8, 2005.

■ In any event, it would be inappropriate to convert the Underwriter Defendants' motion to dismiss into a summary judgment motion. A motion to dismiss is customarily converted into a motion for summary judgment when summary judgment can be granted and adequate notice has been given to make the conversion fair. While a district court must convert a motion to dismiss into one for summary judgment where the motion "includes material outside the pleadings and that material is not excluded by the court," *Morton*, 380 F.3d at 66 (citation omitted), it also must provide all parties with "a reasonable opportunity to present all material made

pertinent to such a motion." *Id.* at 68 (quoting Rule 12(c), Fed.R.Civ.P.). "A party is deemed to have notice that a motion may be converted into one for summary judgment if that party should reasonably have recognized the possibility that such a conversion would occur." *Id.* (citation omitted). NYCERS is certainly not suggesting that summary judgment can be granted in favor of the defendants at this time. It would similarly be unfair to find that the instant motion could be the basis for granting summary judgment against the defendants. The Underwriter Defendants have not relied on material extraneous to the Complaint. NYCERS' application to convert the motion to dismiss into a motion for summary judgment is denied.

NYCERS' reference to the Response material is a *de facto* amendment of its pleadings. Tellingly, however, NYCERS has not moved to amend its pleading. Nor did it move at any time during the intervening eighteen months since it filed the Complaint to amend its pleading. Consequently, the sufficiency of the allegations in the Complaint shall be judged on the content of the Complaint itself.

### 2. Claim IV: Section 10(b)

■ The Audit Committee Defendants and two members of the Compensation Committee, Macklin and Tucker, have moved to dismiss the Section 10(b) claim brought against them on the ground that the Complaint does not adequately plead their scienter.[13] The standards for pleading a Section 10(b) claim, including the pleading of scienter, have already been described in Opinions issued in the *Securi-*

---

**13.** The class action filed in the *Securities Litigation* pleaded an Exchange Act Section 10(b) claim against the Audit Committee Defendants. That claim was dismissed. *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 23174761 (S.D.N.Y. Dec.3, 2003). A Section 10(b) claim against Kellett survived motion practice in the class action. *WorldCom*, 294 F.Supp.2d at 419.

*ties Litigation*, and those standards are incorporated herein. *See, e.g., WorldCom*, 294 F.Supp.2d at 411–12; *WorldCom*, 2003 WL 23174761, at *4. In brief, a complaint must allege facts giving rise to a strong inference of fraudulent intent either by alleging facts to show that the defendant had both a motive and opportunity to commit fraud, or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *WorldCom*, 294 F.Supp.2d at 411 (collecting authority). The Second Circuit has identified four types of allegations that may be sufficient to allege scienter. They are allegations that the defendants "(1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir.2000).

In resisting this motion to dismiss, NYCERS contends that it has sufficiently alleged scienter by the directors who have brought this motion to dismiss by alleging that these directors misled investors as to the credit risk regarding WorldCom's loan to Ebbers.[14] The passages of the Complaint to which NYCERS refers allege that on September 6, 2000, the Compensation Committee authorized WorldCom to give Ebbers a $50 million loan and a $10 million retention bonus because it recognized that WorldCom's stock price would by hurt by any public disclosure that Ebbers was having difficulty meeting margin calls. *See also WorldCom*, 346 F.Supp.2d at 639–40 (describing Ebbers' dependence on WorldCom's stock price for his personal financial security and his need for assistance to meet margin calls as the stock price fell). The Complaint asserts that the Compensation Committee did not seek Board approval for this action or address matters such as the loan's interest rate, maturity date, or whether security was necessary. The Complaint asserts that the Compensation Committee took steps to keep the existence of the loan confidential, but that WorldCom's general counsel learned of the loan authorization in late September. In late September, the Compensation Committee denied a request from Ebbers for an additional loan. WorldCom publicly announced the loan and guaranty in its Form 10–Q filed on November 14, 2000.

Of the moving Director Defendants, these allegations only affect Macklin and Tucker, who were members of the Compensation Committee. The motion by the Audit Committee Defendants is therefore granted.[15] As far as Macklin and Tucker are concerned, the gist of these allegations is that they approved a $50 million loan to Ebbers without addressing the terms customarily associated with a loan, and that they sought to keep the loan confidential because they were concerned about the effect of any disclosure on the company's stock price. Because of their efforts, disclosure of the loan was delayed for a period of weeks. The legal issue is whether these allegations are sufficient to allege scienter for the securities fraud claim NYCERS has brought against these two men. The Exchange Act Section 10(b) claim asserts the existence of a three-year scheme by WorldCom and certain individuals associated with WorldCom to misrepresent the company's financial position. NYCERS must present sufficient allegations that the

---

14. NYCERS relies on paragraphs 338–39 and 371 of the Complaint.

15. Although NYCERS asserts in its brief that Bobbitt, who led the Audit Committee, gave guidance to the Compensation Committee, the passage in the Complaint which it recites for that proposition does not allege that fact.

defendants were either aware of the fraud or reckless as to the existence of that fraud.

NYCERS' allegations do not attempt to plead scienter by alleging that these two directors had a motive and opportunity to commit the fraud charged in the Complaint. They are instead allegations of conscious misbehavior and recklessness. Of the four examples recited above of successful pleading, the allegations are most closely aligned with defendants who engage in deliberately illegal behavior. For example, the allegations do not identify any concrete and personal benefit to the two defendants, any public statements that had been made that were no longer accurate, or any information that they had a duty to monitor and check.

■ The precise question posed, therefore, is whether the allegations that Macklin and Tucker approved an improper loan to their company's CEO, and sought to conceal the loan from the Board and the public, create a strong inference that the two men knew of WorldCom's misrepresentations of its financial condition to the public or were reckless as to the existence of those misrepresentations. As the Second Circuit has framed it, have the plaintiffs alleged facts showing that the defendants' conduct was "highly unreasonable, representing an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it?" *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000) (citation omitted). Accepting that NYCERS has described highly unreasonable conduct by Macklin and Tucker—a willingness to misuse corporate funds and to withhold from investors knowledge about Ebbers' reliance on WorldCom's

stock price—it has not connected this conduct to the fraud it has alleged. Taking all inferences in favor of NYCERS, Macklin and Tucker's conduct does not tend to show that the danger of the fraud charged in the Complaint was known to either man or obvious to him. Had the loan not been disclosed, these allegations would certainly be sufficient to allege scienter with respect to that deception. That, however, is not the scheme with which they are charged, and therefore, the allegations against them in Claim IV are dismissed.

### 3. Claim Six: Common Law Fraud

The Audit Committee and Macklin and Tucker have moved to dismiss the common law fraud claim pleaded against them on the ground that it fails to plead fraud with the particularity required by Rule 9(b), Fed.R.Civ.P. It is undisputed that New York law is the source for the common law on which NYCERS brings its claims.[16]

■ To plead a claim for fraud under New York law, a complaint must allege that the defendant made a material misrepresentation, that the defendant knew of its falsity and possessed an intent to defraud, and that the plaintiff reasonably relied on the misrepresentation and suffered damage as a result. *Kaye v. Grossman*, 202 F.3d 611, 614 (2d Cir.2000). As NYCERS has pointed to no allegations in its Complaint that plead a claim of fraud against the Audit Committee Defendants, their motion to dismiss this claim is granted. For the reasons already discussed in connection with the Section 10(b) claim, the motion by Macklin and Tucker is also granted.

Defendants Salomon, Grubman and Andersen have moved to dismiss Claim VI to

---

**16.** The parties have each relied upon New York law in addressing this motion, and their consent to its application makes any further choice of law analysis unnecessary. *See 3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 743 (2d Cir.1999).

the extent it seeks recovery for those who held WorldCom securities, as opposed to those who purchased or sold the securities in reliance on alleged misrepresentations and omissions. A recent Opinion in the *Securities Litigation* surveyed the law across the country regarding "holder" claims. *See In re WorldCom, Inc. Sec. Litig.*, 336 F.Supp.2d 310 (S.D.N.Y.2004) ("WorldCom Holder Opinion"). The WorldCom Holder Opinion is incorporated by reference. Briefly, the Opinion explained that a "holder" action is an action in which the plaintiffs allege that material misrepresentations or omissions caused them to retain ownership of securities that they acquired prior to the alleged wrongdoing. *Id.* at 318–19. "Because of the inherent difficulty of proving reliance and damages in such actions, as well as the potential for non-meritorious suits brought merely to extract a settlement," it has been long established that holders of securities cannot bring federal securities law claims. *Id.* at 319. *See also Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 40–41 (2d Cir.2005) (describing policy concerns behind the standing rule in federal securities law actions). The WorldCom Holder Opinion reviewed the law of jurisdictions across the country and concluded that common law claims by holders have been routinely rejected, and that there was no basis "to predict that the Georgia Supreme Court would recognize a cause of action for a class of plaintiffs who are alleged to have held their stock in reliance on misrepresentations or omissions." *WorldCom*, 336 F.Supp.2d at 322. This survey contained a discussion of *Gutman v. Howard Sav. Bank*, 748 F.Supp. 254 (D.N.J.1990), and its analysis of the law of New York and New Jersey. *Gutman* found that

an individual plaintiff may state a common law fraud claim against a defendant whose misrepresentations caused plaintiff to hold securities which plaintiff otherwise would have sold. In *Gutman,* however, plaintiffs alleged repeated, face-to-face contact with the defendants during which defendants made verbal and written misrepresentations. *Gutman* expressly limited "holder" claims to situations involving such direct communication.

*WorldCom*, 336 F.Supp.2d at 321 (citation omitted).

Since the law of New York on this issue is not yet authoritatively articulated, this Court must carefully "predict" how the highest court of New York would resolve the uncertainty. *Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 199 (2d Cir.2003). NYCERS has not shown that the analysis in the WorldCom Holder Opinion does not apply to their claim of fraud under New York law.[17]

 New York recognizes a claim a fraud where investors were induced to retain securities in reliance on a defendant's misrepresentations. *Primavera Familienstifung v. Askin*, 130 F.Supp.2d 450, 494 (S.D.N.Y.2001) (collecting cases). Because of the requirement that a plaintiff prove justifiable reliance, however, there must be a sufficiently direct communication from the defendant to the plaintiff to support a claim that the fraud induced inaction. Indeed, the two main cases on which NYCERS relies for the proposition that a defrauded holder of securities may assert a claim for common law fraud under New York law were cases in which reliance could be shown because there was direct communication between the plaintiffs and defendants. *See Primavera,* 130

---

**17.** NYCERS does not refer to the WorldCom Holder Opinion in its opposition to this motion, or attempt to grapple with its analysis, even though the moving briefs had relied upon the decision.

F.Supp.2d at 471, 501–02; *Continental Ins. Co. v. Mercadante,* 222 A.D. 181, 225 N.Y.S. 488, 489 (1st Dept.1927). The other case on which it relies, which involved a purchase of notes on the condition that the defendant accounting firm provide annual negative assurance letters to the plaintiff noteholders, also contained direct evidence of reliance. *See AUSA Life Ins. Co. v. Ernst & Young,* 206 F.3d 202, 205 (2d Cir.2000). NYCERS has not attempted to resist this motion with any citation to a pleading of such direct communication between NYCERS and Salomon, Grubman or Andersen. The motion to dismiss from Claim VI the holder claims brought against Salomon, Grubman and Andersen is granted.

### 4. Aiding and Abetting Common Law Fraud

■ Each of the defendants named in the final claim—Andersen, the Underwriter Defendants, the Citigroup Defendants—moves to dismiss the claim with the argument that the Martin Act preempts a cause of action for aiding and abetting common law fraud. On this ground, their motion is denied.[18] The defendants, however, press other arguments addressed to the adequacy of the pleading.

■ Under New York law, a claim of aiding and abetting fraud requires a plaintiff to plead pursuant to Rule 9(b), Fed.R.Civ.P., the existence of a fraud, a defendant's knowledge of the fraud, and a defendant's substantial assistance to advance the commission of the fraud. *Wight v. Bankamerica Corp.,* 219 F.3d 79, 91 (2d Cir.2000); *Cromer Finance Ltd. v. Berger,* 137 F.Supp.2d 452, 470 (S.D.N.Y.2001). With respect to a defendant's knowledge of the fraud, the actual knowledge of the fraud may be "averred generally." *Wight,* 219 F.3d at 91 (citing Rule 9(b), Fed.R.Civ. P.). Pleading knowledge in the alternative with an allegation of reckless disregard is insufficient to allege a claim. *See, e.g., Filler v. Hanvit Bank,* 339 F.Supp.2d 553, 560 (S.D.N.Y.2004); *Williams v. Bank Leumi Trust Co.,* No. 96 Civ. 6695(LMM), 1997 WL 289865, at *5 (S.D.N.Y. May 30, 1997).

The substantial assistance prong is fulfilled where a defendant "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed." *OSRecovery, Inc. v. One Groupe Int'l, Inc.,* 354 F.Supp.2d 357, 378 (S.D.N.Y.2005) (citation omitted). Substantial assistance requires a plaintiff to allege that the action of the aider and abettor "proximately caused the harm on which the primary liability is predicated." *Filler,* 339 F.Supp.2d at 557 (citation omitted). The injury suffered by the plaintiff must be a "direct or reasonably foreseeable result of the conduct." *Filler v. Hanvit Bank,* Nos. 01 Civ. 9510(MGC), 02 Civ. 8251(MGC), 2003 WL 22110773, at *2 (S.D.N.Y. Sept. 12, 2003).

■ The Underwriter Defendants argue that NYCERS has failed to plead an essential element of the claim, to wit, its actual knowledge of the fraud. They are

---

**18.** The motion is denied for the reasons explained in *Cromer Finance Ltd. v. Berger,* No. 00 Civ. 2498(DLC), 2001 WL 1112548, at *3–4 (S.D.N.Y. Sept. 19, 2001). *But see Marcus v. Frome,* 329 F.Supp.2d 464, 475–76 (S.D.N.Y.2004) (negligent misrepresentation); *Nanopierce Tech., Inc. v. Southridge Capital Mgmt. LLC,* No. 02 Civ. 767(LBS), 2003 WL 22052894, at *2–*4 (S.D.N.Y. Sept.2, 2003) (breach of fiduciary duty claim). *Nanopierce* rejected the analysis in *Cromer,* explaining that common law claims for fraud, unlike a claim for breach of fiduciary duty, were not precluded by the Martin Act because they require proof of "deceitful intent." *Nanopierce,* 2003 WL 22052894, at *4. Based on that analysis, it is not clear that even the court in *Nanopierce* would find that the Martin Act preempted a claim for aiding and abetting fraud.

correct. NYCERS alleges that the Underwriter Defendants "knew or recklessly disregarded" WorldCom's fraud. This is an insufficient allegation of actual knowledge.

Nothing in *Primavera*, 130 F.Supp.2d 450, on which NYCERS relies, can be fairly read to suggest any lessening of the burden to plead and prove actual knowledge. To the contrary, the court explicitly rejected the notion that proof of recklessness would suffice. *Id.* at 507 n. 64. It held that the plaintiff would have to prove knowledge by the aider and abetter at trial "by clear and convincing evidence" that was sufficient to support "a strong inference of fraudulent intent." *Id.* at 507 (citation omitted). It rejected application of an even more exacting standard where there is a "symbiotic fraudulent scheme," as opposed to a more remote relationship between the primary perpetrator and the aider and abettor. *Id.* at 508. The application of the Underwriter Defendants to dismiss the aiding and abetting claim brought against them is granted.

Andersen joins in the motion of the Underwriter Defendants. Given that there is no scienter allegation at all pleaded against Andersen in Claim VII, Andersen's motion is granted.

■■■ The Citigroup Defendants move to dismiss Claim VII because the claim does not allege that their actions proximately caused the accounting fraud at WorldCom. NYCERS responds that the fraud it has alleged is the dissemination to the public of WorldCom's false and misleading documents, and that Salomon substantially assisted that fraud through assisting in the preparation and dissemination of those documents. NYCERS appears to be relying on its contention that Salomon, as lead underwriter for the two Offerings, aided the fraud through its

work on the registration statements for the two Offerings. Since NYCERS' response focuses entirely on Salomon's conduct, the motion to dismiss by Citigroup and Grubman is granted.

■■■ Salomon's motion is denied. Since it is assumed for purposes of this motion that NYCERS has adequately pleaded Salomon's knowledge of the alleged accounting fraud at WorldCom,[19] the question is only whether Salomon's work as lead underwriter in the preparation and dissemination of the registration statements through which WorldCom sold approximately $17 billion worth of bonds constitutes a sufficient allegation of substantial assistance. A lead underwriter affirmatively assists a fraud when it helps to prepare the documents through which the fraud will be perpetrated and sells securities to the public through documents it knows to contain a materially false description of the offering company's financial condition. While there is no allegation that Salomon created the accounting fraud at WorldCom or assisted in altering WorldCom's financial statements, its conduct in assisting WorldCom to raise money based on false financial statements is a proximate cause of the injury to NYCERS.

In support of its motion, Salomon relies exclusively on the holding in *Cromer*, 137 F.Supp.2d at 452, to the effect that a complaint's claim against a clearing broker, Bear Stearns, for aiding and abetting a securities fraud was insufficient because the pleading did not contain adequate allegations that the broker provided substantial assistance to the fraud. *Id.* at 470–72. In *Cromer*, the plaintiff had alleged that the clearing broker violated margin rules and over-extended margin credit to the fund that committed the fraud. *Id.* at 471.

19. Salomon has not challenged the adequacy of the scienter allegations in the Complaint.

It also alleged that the Ponzi scheme embodied in the fraud could not have functioned but for the extension of credit and margin violations. *Id.* at 472. The Court rejected this latter argument by observing that, "[w]hile the Ponzi scheme may only have been possible because of Bear Stearns' actions, or inaction, Bear Stearns' conduct was not a proximate cause of the Ponzi scheme." *Id.*

Here, in contrast, NYCERS has alleged far more than "but for" causation. It has described Salomon's role as integral to the fraud itself. An allegation that a lead underwriter has knowingly prepared and disseminated false registration statements to raise money for a company through the sale of its notes is an adequate allegation that the underwriter's conduct is a proximate cause of the loss suffered by investors who bought the notes.

### Conclusion

For the reasons stated above, the defendants' motion to dismiss is granted in part and denied in part. Claims IV and VI are dismissed with respect to the Audit Committee Defendants, Macklin, and Tucker. Claim VI is also dismissed as against Salomon, Grubman, and Andersen insofar as it alleges holder claims. Claim VII is dismissed as to the Underwriter Defendants, Andersen, Citigroup, and Grubman, but not with respect to Salomon.

SO ORDERED.